Filed 5/31/13  P. v. Calvo CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G047191 |
| v. | (Super. Ct. No. 11CF2057) |
| ROBERTO MARIN CALVO, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Dan McNerney, Judge.  Reversed in part and affirmed in part.

Gerald J. Miller, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, A. Natasha Cortina, Melissa Mandel, and Charles C. Ragland, Deputy Attorneys General, for Plaintiff and Respondent.

Roberto Marin Calvo appeals from a judgment after a jury convicted him of possession of cocaine base for sale and street terrorism, and found true he committed the former offense for the benefit of a criminal street gang. Calvo argues insufficient evidence supports his convictions and the jury's finding on the street terrorism enhancement. The Attorney General agrees that because Calvo acted alone, he could not be convicted of street terrorism. We reverse his conviction for street terrorism and affirm the judgment in all other respects.

FACTS

Officers Jason Bruns and John Rodriguez were on patrol in a marked patrol car in a high-crime Santa Ana neighborhood claimed by the Townsend Street criminal street gang. Based on their prior experience, the officers knew the area was where Townsend Street gang members sold drugs, including crack cocaine. While on patrol, the officers saw several men, including one man later identified as Calvo, standing on Townsend Street. When Calvo saw the marked patrol car, he ran into an apartment complex courtyard. Bruns got out of his car and chased Calvo, but Bruns lost sight of Calvo when he entered the alley. Bruns entered a courtyard and saw Calvo crouched down behind a concrete wall; Bruns could see Calvo had tattoos on his head, including a "T," one of the symbols of the Townsend Street criminal street gang.

As Bruns walked around the wall, Calvo again fled. Bruns yelled for Calvo to stop and identified himself as a police officer but Calvo continued fleeing. As Calvo ran, he dropped something and dove onto the sidewalk in front of Rodriguez. Bruns and Rodriguez approached Calvo, put their knees on his back, and handcuffed him. Bruns recovered the item Calvo had discarded. The contraband, which Bruns believed to be crack cocaine, was in the shape of a wafer and slightly larger than a quarter. Back at the police station, Bruns tested the substance and determined it to be .5 grams of cocaine. Calvo had $45, two $20 bills and one $5 bill in his pocket. Calvo did not possess any

2

drug paraphernalia and did not appear to be under the influence of narcotics. Later, forensic testing established the substance was .468 grams of cocaine.

An information charged Calvo with possession for sale of cocaine base (Health & Saf. Code, § 11351.5) (count 1), and street terrorism (Pen. Code, § 186.22, subd. (a)) (count 2). The information alleged Calvo committed count 1 for the benefit of a criminal street gang (Pen. Code, § 186.22, subd. (b)(1)). Finally, the information alleged he was convicted of a serious and violent felony (Pen. Code, §§ 667, subds. (d), (e)(1), 1170.12, subds. (b), (c)(1)), he was convicted of a serious felony (Pen. Code, § 667, subd. (a)(1)), and he served two prior prison terms (Pen. Code, § 667.5, subd. (b)).

At trial, Bruns testified concerning the events as described above. He also testified regarding whether Calvo possessed the drugs for the purpose of sale or for personal use. Additionally, Bruns testified concerning his background, training, and experience in narcotics and criminal street gang investigations. Bruns explained Townsend Street gang members are well known for selling crack cocaine through hand-to-hand exchanges of drugs for cash. He stated crack cocaine is sold by breaking off small pieces from a larger piece, or selling already broken pieces, so weighing equipment is unnecessary and the crack cocaine is not packaged separately. He also said drug dealers are usually found carrying money in small denominations. Pursuant to the prosecutor's request, Bruns examined the exhibit envelope containing the contraband. Bruns stated the crack cocaine had broken into about six pieces and each piece would sell for approximately $10. Bruns estimated that depending on the user there could be anywhere between 15 to 50 "hits" or uses in the cocaine. Bruns opined Calvo possessed the cocaine for sale based on the following: (1) the amount of cocaine in his possession; (2) the fact he possessed $45 in small denominations; (3) where Calvo was arrested; and (4) the fact he did not possess any paraphernalia to ingest the drug.

Rodriguez also testified on the issue of Calvo's intent for possessing the cocaine. Rodriguez also testified regarding his background, training, and experience in

3

narcotics investigations. Rodriguez also opined Calvo possessed the cocaine for purposes of sale.

The prosecutor also offered the testimony of a gang expert, Officer Dominick Padilla. After detailing his background, training, and experience, Padilla testified concerning the culture and habits of traditional, turf-oriented Hispanic criminal street gangs. Padilla stated Hispanic gangs must support the Mexican Mafia to operate in Orange and Los Angeles counties. He explained the Mexican Mafia controls gang movement on the streets and if a Hispanic gang does not obey the rules, the Mexican Mafia will retaliate against the gang. He said Hispanic gangs must pay taxes to the Mexican Mafia, often times from the proceeds of the sale of narcotics. He also said Hispanic gangs use the proceeds from narcotics sales to purchase guns. He explained gang members establish their reputations by using the guns to commit violent crimes and by discussing the crimes they commit with other gang members. He said tattoos are an important part of gang culture because it is a permanent, nonverbal method of claiming a gang.

Padilla testified concerning the Townsend Street gang. He described its historical development, the number of members (60), its color (navy blue), the sports team garb it wears (the Minnesota Twins), its symbols ("C.T.R." and "T"), and its primary activities (narcotics sales and weapons violations). He also testified concerning the statutorily required predicate offenses, including one where a known Townsend Street gang member was convicted of possessing cocaine base and heroin for the purpose of sale. He said the charged offenses occurred in Townsend Street territory. He explained non-gang members who live in the neighborhood can sell narcotics in Townsend Street claimed territory if they pay taxes. He stated non-gang members sell drugs on Friday evenings and Saturday afternoons and Townsend Street gang members during all other times.

Padilla also testified he conducted a background investigation of Calvo. Padilla said he reviewed the police report of the incident and Street Terrorism Enforcement and Prevention Act (STEP)[1] notices law enforcement officers issued to Calvo. Padilla stated that in January 2007, police officers contacted Calvo, who was in Townsend Street claimed territory with other known Townsend Street gang members and was wearing gang attire. He also stated that three months later, officers contacted Calvo in Townsend Street claimed territory wearing gang attire and possessing narcotics; Calvo admitted to officers he was a Townsend Street gang member and his moniker was "Menace." Finally, Padilla said that in January 2010 police officers again contacted Calvo who again admitted his gang membership and his moniker. Padilla opined that Calvo got the tattoo of the "T" on his head sometime after February 2010, because that tattoo was not documented at the time of the last contact.

Padilla testified concerning the sale of narcotics in Townsend Street claimed territory. Padilla said Townsend Street gang members and non-gang members who pay taxes can sell drugs in the claimed territory. Padilla described a schedule where gang members sell narcotics on some days and non-gang members sell narcotics on other days. Based on his investigation of this case and of Calvo, Padilla opined that at the time of the charged offenses Calvo was an active participant in the Townsend Street criminal street gang.

Calvo did not testify at trial. He did, however, offer testimony that officers used unnecessary force when they arrested him, caused him severe injuries, and lied at trial about how he suffered his injuries.

---

[1] Padilla explained a STEP notice is a document a police officer uses to record a contact with a possible gang member. The STEP notice includes the details of the contact and the person's physical characteristics. The STEP document also notifies the person that the gang the person is affiliating with is a criminal street gang and notifies the recipient the gang commits certain crimes.

The jury convicted Calvo of both counts and found true the street terrorism allegation. After the trial court found true the prior conviction allegations and denied Calvo's motion to strike his prior "strike" conviction, the court sentenced Calvo to 11 years in prison: double the low term of six years on count 1 and five years on his prior serious felony conviction. Pursuant to section 654, the court imposed and stayed a concurrent two-year term on count 2. The court imposed and struck the sentences on the street terrorism enhancement as to count 1, and the remaining prior convictions.

DISCUSSION

"In considering a challenge to the sufficiency of the evidence . . . , [the appellate court] review[s] the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.] [It] presume[s] every fact in support of the judgment the trier of fact could have reasonably deduced from the evidence. [Citation.] If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding. [Citation.] 'A reviewing court neither reweighs evidence nor reevaluates a witness's credibility.' [Citation.]" (*People v. Albillar* (2010) 51 Cal.4th 47, 59-60 (*Albillar*).)

*Possession of Cocaine Base for Sale*

Calvo argues insufficient evidence supports his conviction for possession of cocaine base for sale. We disagree.

Unlawful possession of a controlled substance for sale requires proof that the defendant possessed the substance with the intent to sell, and with knowledge of its presence and its illegal character. (*People v. Harris* (2000) 83 Cal.App.4th 371, 374 (*Harris*).) "Intent to sell may be established by circumstantial evidence." (*Ibid*.) "'In cases involving possession of [drugs], experienced officers may give their opinion that

6

the narcotics are held for purposes of sale based upon such matters as the quantity, packaging and normal use of an individual; on the basis of such testimony convictions of possession for purpose of sale have been upheld. [Citations.]' [Citation.]" (*Harris, supra,* 83 Cal.App.4th at pp. 374-375.)

Here, the record includes sufficient circumstantial evidence from which the jury could reasonably conclude Calvo possessed the cocaine for the purpose of sale. The evidence at trial established the following: In addition to Calvo admitting he was a Townsend Street gang member, Calvo had the gang's symbol tattooed on his head, and officers saw him wearing the gang's uniform. Townsend Street gang members were known to sell narcotics in their claimed territory; one of Calvo's confederates was convicted of possession of narcotics for sale. When officers spied Calvo, he was in Townsend Street claimed territory. When Calvo saw the marked patrol car, he fled and tried to discard the narcotics.

With respect to the contraband, it is true it was not a large amount, a wafer approximately the size of a quarter that weighed about one half of a gram. But as we state above, convictions for sale are regularly found sufficient on the basis of expert opinion after considering a myriad of factors. (*Harris, supra,* 83 Cal.App.4th at p. 375; *People v. Parra* (1999) 70 Cal.App.4th 222, 225.) Bruns opined Calvo possessed the crack cocaine for sale based on the following facts: Calvo possessed an amount of crack cocaine that was worth approximately $60 and could be used for anywhere between 15 to 50 uses depending on the user. Bruns's evaluation of the value and the number of uses provided the jury with credible evidence Calvo did not possess the crack cocaine for personal use. Additionally, Bruns found it significant Calvo had two $20 bills and one $5 bill as drug dealers usually carry money in small denominations. Even if we were to conclude a $20 bill is not a bill of small denomination, Bruns's testimony provided the jury with evidence from which it could conclude Calvo carried money to make change during any hand-to-hand sales of narcotics. Finally, Calvo did not possess any

7

paraphernalia to ingest the drug when he was arrested.  Based on this fact, and the fact he appeared to be sober, the jury could reasonably conclude Calvo possessed the narcotics for purposes of sale and not for personal use.

Calvo relies on a number of cases to argue the amount of crack cocaine he possessed was de minimus (*People v. Austin* (1994) 23 Cal.App.4th 1596, overruled on other grounds in *People v. Palmer* (2001) 24 Cal.4th 856; *People v. Shipstead* (1971) 19 Cal.App.3d 58; *People v. Velasquez* (1970) 3 Cal.App.3d 776 (*Velasquez*)), he did not have any weighing equipment or packing materials (*People v. Langley* (1974) 41 Cal.App.3d 339; *People v. Aguilar* (1965) 232 Cal.App.2d 173, overruled on other grounds in *Lorenzana v. Superior Court* (1973) 9 Cal.3d 626), and there were no potential buyers at the scene (*Velasquez, supra,* 3 Cal.App.3d 776).  Calvo's reliance on these cases is misplaced.

First, as we explain above, Bruns's expert opinion provided the jury with evidence from which it could reasonably conclude the amount of crack cocaine Calvo possessed exceeded what one would carry for personal use.  Having heard Bruns's expert testimony that Calvo intended to sell the crack cocaine, it was for the jury to credit such opinion testimony or reject it.  (*Harris, supra,* 83 Cal.App.4th at p. 375.)  Second, Bruns explained that because of its brittle nature, Calvo could easily break off a piece of the narcotic and thus no weighing or packaging materials were required.  Finally, that officers did not see Calvo engage in a hand-to-hand transaction does not mean he did not intend to sell the narcotics.  Moreover, there were other men standing with Calvo, but he fled when he saw the marked patrol car.  Thus, based on the entire record, we conclude Bruns's expert testimony on narcotics sales and criminal street gangs provided sufficient evidence for the jury to convict Calvo of possession of cocaine base for sale.

8

*Street Terrorism*

   *Substantive Offense*

Calvo contends he could not be convicted of street terrorism because he acted alone. The Attorney General concedes the issue, although she does point out the evidence supports the conclusion Calvo acted with other Townsend Street gang members, and it is the prosecutor's theory of the case and the jury instructions that compel its concession. Based on *People v. Rodriguez* (2012) 55 Cal.4th 1125 (*Rodriguez*), we agree that Calvo, who acted alone, could not be convicted of committing street terrorism.

The street terrorism substantive offense, section 186.22, subdivision (a), states: "Any person who actively participates in any criminal street gang with knowledge that its members engage in or have engaged in a pattern of criminal gang activity, and who willfully promotes, furthers, or assists in any felonious criminal conduct by members of that gang, shall be punished . . . in the state prison for 16 months, or two or three years." There are three elements to the substantive street terrorism offense: (1) active participation in a criminal street gang; (2) knowledge the gang's members have engaged in a pattern of criminal gang activity; and (3) willfully promoting, furthering, or assisting in any felonious criminal conduct by members of the gang. (*Albillar, supra,* 51 Cal.4th at p. 56.)

In *Rodriguez, supra,* 55 Cal.4th at page 1128, defendant acted alone in committing an attempted robbery. A jury convicted him of attempted robbery and active participation in a criminal street gang under section 186.22, subdivision (a). (*Rodriguez, supra,* 55 Cal.4th at p. 1129.) The issue in *Rodriguez*, like the issue Calvo raises here, was whether the third element of the crime described in section 186.22, subdivision (a)—willfully promoting, furthering, or assisting in any felonious criminal conduct by members of the defendant's gang—can be satisfied by felonious criminal conduct committed by the defendant acting alone. (*Rodriguez, supra,* 55 Cal.4th at

9

p. 1129.)  The court held that it does not, and expressly disapproved of prior cases to the extent they are inconsistent with *Rodriguez.*  (*Id.* at p. 1137, fn. 8.)

The *Rodriguez* court began by analyzing the statute according to its "'plain, commonsense meaning . . . .'"  (*Rodriguez, supra,* 55 Cal.4th at p. 1131.)  The felonious criminal conduct referred to in the statute must be committed "'by members of that gang.'"  (*Rodriguez, supra,* 55 Cal.4th at p. 1131.)  The word "'[m]embers,'" the court explained, is a plural noun.  (*Id.* at p. 1132.)  Therefore, the court reasoned "[t]he plain meaning of section 186.22[, subdivision] (a) requires that felonious criminal conduct be committed by at least two gang members, one of whom can include the defendant if he is a gang member.  [Citation.]"  (*Ibid*.)  Because the defendant acted alone, he did not violate section 186.22, subdivision (a).  (*Rodriguez, supra,* 55 Cal.4th at p. 1139.)

*Rodriguez* controls the outcome of the issue here.  Because the evidence at trial supports the conclusion Calvo acted alone in committing his crimes—the only crimes the prosecution relied on to support the third element of the gang participation count—there is insufficient evidence to support the conviction on that count. Accordingly, we will reverse the conviction on count 2.

*Enhancement*

Calvo contends insufficient evidence supports the jury's finding he committed count 1 for the benefit of a criminal street gang.  Not so.

"[A]ny person who is convicted of a felony committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members, shall, upon conviction of that felony, in addition and consecutive to the punishment prescribed for the felony or attempted felony of which he or she has been convicted, be punished . . . ." (§ 186.22, subd. (b)(1).

In *Albillar, supra,* 51 Cal.4th at page 60, the California Supreme Court explained that although not every crime committed by gang members is related to a gang

10

for purposes of the first prong, a crime can satisfy the first prong when it is committed in association with the gang, or when it is committed for the benefit of the gang. The *Albillar* court also explained the second prong, which requires the defendant commit the gang-related felony "with the specific intent to promote, further, or assist in any criminal conduct by gang members" (§ 186.22, subd. (b)(1)), need not encompass proof the defendant committed the crime with the specific intent to promote, further, or assist other criminal conduct by gang members. Instead, that subdivision "encompasses the specific intent to promote, further, or assist in *any* criminal conduct by gang members—including the current offenses—and not merely *other* criminal conduct by gang members." (*Albillar, supra,* 51 Cal.4th at p. 65.) The *Albillar* court stated a gang expert's opinion is admissible *as part of* the evidentiary showing on how the crimes can benefit the gang. (*Id.* at p. 63.)

Here, sufficient evidence supports the jury's finding Calvo committed count 1 for the benefit of Townsend Street. There was certainly evidence from which the jury could conclude that at the time of the offenses, Calvo was an active participant in Townsend Street. Law enforcement officers had prior contacts with Calvo where he associated with known Townsend Street gang members and wore Townsend Street colors. On two of those occasions he admitted to being a member of Townsend Street and having a gang moniker. On one of those occasions he possessed narcotics. Finally, Calvo had tattooed on his head one of the Townsend Street gang symbols, a "T."

More importantly, Bruns testified the offenses occurred in Townsend Street claimed territory, and Townsend Street was known for selling narcotics. Additionally, Calvo was arrested on a Tuesday, a day according to Bruns that only Townsend Street gang members can sell narcotics in Townsend Street claimed territory. Bruns opined drug dealers sell narcotics to pay taxes to the Mexican Mafia and to purchase guns to commit violent crimes, which enhances the gang member's and gang's reputation in the community. From this evidence the jury could certainly conclude Calvo, a Townsend

11

Street gang member, was selling narcotics for the benefit of Townsend Street, and with the specific intent to promote criminal conduct.

Calvo relies on *In re Daniel C.* (2011) 195 Cal.App.4th 1350 (*Daniel C.*), *People v. Ochoa* (2009) 179 Cal.App.4th 650 (*Ochoa*), *People v. Ramon* (2009) 175 Cal.App.4th 843 (*Ramon*), and *In re Frank S.* (2006) 141 Cal.App.4th 1192 (*Frank S.*), to argue there was no evidence he committed count 1 with the specific intent to benefit Townsend Street. His reliance on these cases is misplaced.

In *Daniel C., supra,* 195 Cal.App.4th at page 1353, a grocery store manager saw three young men enter the store on a surveillance camera. After two of the men left, minor selected a bottle of liquor. The manager left the security office and positioned himself near the exit door of the store. Minor walked to the front of the store and through a check stand carrying the bottle. When the manager approached minor and said, "'Give me the bottle,'" minor struck him with the bottle. (*Ibid.*) Minor ran out the entrance door and to a truck, which then drove off. (*Id.* at p. 1354.) During an interview with police, minor indicated his friends did not know he intended to take alcohol without paying for it. (*Ibid.*) The court of appeal concluded there was insufficient evidence to support the street gang enhancement because there was no evidence minor acted in concert with his companions and there was no evidence he claimed gang membership. (*Id.* at pp. 1359, 1361.)

Here, as we explain above, there was substantial evidence that at the time of the offense Calvo was an active participant in Townsend Street and that while in Townsend Street claimed territory, he was engaged in one of Townsend Street's primary activities, selling narcotics. As to Calvo's assertion he did not claim gang membership during the offense, of course he did. Until he visits "Dr. TATTOFF" laser tattoo removal or decides to stop shaving his head, he openly and continuously claims his Townsend Street gang membership as he has one of Townsend Street's symbols tattooed on the top of his head.

12

In *Ochoa, supra,* 179 Cal.App.4th at page 662, the court of appeal reversed a gang enhancement finding when defendant did not wear gang clothing, display gang signs or call out a gang name while committing a crime. There was no testimony the crime was committed in gang territory, and defendant was not in the company of any fellow gang members. (*Ibid.*) The court found no evidentiary support for the gang expert's testimony the crime might benefit defendant's gang. (*Ibid.*) In contrast, the offense here was committed in Townsend Street claimed territory, and although there was no evidence Calvo was with other Townsend Street gang members, he was flying the gang's symbol, on the top of his head.

In *Ramon, supra,* 175 Cal.App.4th 843, defendant was convicted of, among other things, receiving a stolen vehicle and possession of a firearm by a felon. The court found the evidence the perpetrators were gang members and the crime was committed in the gang's territory was insufficient to support the gang enhancement. (*Id.* at p. 852.) The court noted its analysis might be different if the expert's opinion had included possessing stolen vehicles as one of the gang's activities. (*Id.* at p. 853.) Here, Bruns testified one of Townsend Street's primary activities was narcotics sales.

In *Frank S., supra,* 141 Cal.App.4th 1192, there was insufficient evidence to support a gang enhancement on a finding minor carried a concealed dirk or dagger where the prosecution "did not present any evidence that the minor was in gang territory, had gang members with him, or had any reason to expect to use the knife in a gang-related offense." (*Id.* at p. 1199.) Here, by contrast, Calvo, a Townsend Street gang member was in Townsend Street claimed territory, and there was evidence from which the jury could reasonably conclude he intended to sell the narcotics he possessed, one of Townsend Street's primary activities. Thus, the jury's finding Calvo committed count 1 for the benefit of a criminal street gang is supported by substantial evidence.

13

DISPOSITION

We reverse Calvo's conviction for street terrorism. We affirm the judgment in all other respects. We direct the clerk of the superior court to prepare an amended abstract of judgment and forward it to the Department of Corrections and Rehabilitation, Division of Adult Operations

O'LEARY, P. J.

WE CONCUR:


MOORE, J.


THOMPSON, J.