[No. B136443. Second Dist., Div. Six. Aug. 28, 2000.]

THE PEOPLE, Plaintiff and Respondent, v.
MELVIN HORTON HARRIS, Defendant and Appellant.

## Counsel

Jolene Larimore, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, William T. Harter and Joana Perez Castille, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**YEGAN, Acting P. J.**—Melvin Horton Harris is no stranger to the justice system, penal institutions, or state hospitals. He has suffered 11 serious felony convictions. This time a jury convicted him of possessing methamphetamine and marijuana for sale. (Health & Saf. Code, §§ 11378, 11359.) He was sentenced to state prison for 50 years to life as a "three striker." (Pen. Code, § 667, subd. (e)(2)(A)(ii).) He appeals, alleging that the evidence is insufficient to show possession for sale and that a letter he wrote while in prison was improperly seized. We affirm.

On February 22, 1999, appellant was a patient at Atascadero State Hospital. He was in the visitor area when Sergeant Brian Holland saw that he had a large lump in the cheek of his mouth. He asked appellant to remove the object. Appellant spit out 5.68 grams of methamphetamine, and had bags of marijuana in his shoes weighing 28.13 grams. The value of the drugs in this institutional setting was $3,500 to $4,000.

Sergeant Holland explained that contraband is smuggled into the hospital and sold to patients who barter with postage stamps. The marijuana is sold in tightly rolled cigarettes called "pinners." A pinner contains .1 to .2 grams of marijuana and sells for $6 to $10. Methamphetamine is sold in small paper bindles weighing about .1 grams. He opined that appellant possessed the marijuana and methamphetamine for sale.

After appellant was transferred to the California Men's Colony (CMC), his mail was monitored. On April 14, 1999, appellant wrote a letter that was intercepted by prison authorities. In pertinent part, it stated: "I was in the visiting room visiting my people, or rather some friends on mine. When I got ready to leave the visit room, I noticed a guy standing in the door where the visits come in, and leave. Well, I had some methamphetamine and marijuana. One weighed 6.7 and the other 23.5. I had the meth in my mouth and the marijuana in my shoes. Well, upon leaving this guy who was standing was an undercover police. He tried to engage me in conversation, but I didn't say much, so he followed me to the door. A friend of mine asked me this, get my hall card, I said no, so I have to return to pick it up. The same officer inquire again asking me some questions. I didn't say anything. So he said what's that in your mouth? There is no way out. So I took it out, that's when he went to the lab."

### Sufficiency of the Evidence

■ Appellant contends that the evidence does not support the sale aspect of the charges. "Unlawful possession of a controlled substance for sale requires proof the defendant possessed the contraband with the intent of selling it and with knowledge of both its presence and illegal character. [Citation.]" (*People v. Meza* (1995) 38 Cal.App.4th 1741, 1745-1746 [45 Cal.Rptr.2d 844]; *People v. Parra* (1999) 70 Cal.App.4th 222, 225-226 [82 Cal.Rptr.2d 541].) Intent to sell may be established by circumstantial evidence. (*People v. Glass* (1975) 44 Cal.App.3d 772, 774 [118 Cal.Rptr. 797].)

Appellant had $3,500 to $4,000 worth of drugs on his person. This was the equivalent of 280 marijuana pinners and 200 doses of methamphetamine. Sergeant Holland testified that patients buying contraband generally pay in advance with postage stamps. Appellant had more than 800 postage stamps in his living quarters. The jury could and did draw the inference that he possessed the contraband for sale. (E.g., *People v. Peck* (1996) 52 Cal.App.4th 351, 357 [61 Cal.Rptr.2d 1] [" 'sale' of drugs 'includes transfers other than for money' "].) There was no evidence that appellant had an interest in philatelic pursuits, i.e., that he collected stamps as a hobby. Nor is there any evidence that, even if appellant was a user of drugs, the amount possessed was solely for his personal use. The jury could and did find that a drug user does not carry the equivalent of 200 doses of methamphetamine in his mouth nor 280 marijuana pinners in his shoes. The large quantity of drugs, the postage stamps, and the manner in which the drugs were smuggled into the hospital supported Sergeant Holland's opinion that appellant possessed the drugs for sale.

"In cases involving possession of marijuana or [methamphetamine], experienced officers may give their opinion that the narcotics are held for

purposes of sale based upon such matters as the quantity, packaging and normal use of an individual; on the basis of such testimony convictions of possession for purpose of sale have been upheld. [Citations.]" (*People v. Newman* (1971) 5 Cal.3d 48, 53 [95 Cal.Rptr. 12, 484 P.2d 1356].) Thereafter, it is for the jury to credit such opinion or reject it.

## Mail Monitoring

■ Appellant contends that the mail monitoring violated his privacy rights and that the trial court erred in admitting his April 14, 1999 letter. The argument is without merit. "Except where the communication is a confidential one addressed to an attorney, court or public official, a prisoner has no expectation of privacy with respect to letters posted by him. [Citations.]" (*People v. Garvey* (1979) 99 Cal.App.3d 320, 323 [160 Cal.Rptr. 73]; see also *People v. Phillips* (1985) 41 Cal.3d 29, 80-81 [222 Cal.Rptr. 127, 711 P.2d 423]; *People v. Manson* (1976) 61 Cal.App.3d 102, 152 [132 Cal.Rptr. 265]; *People v. Burns* (1987) 196 Cal.App.3d 1440, 1454 [242 Cal.Rptr. 573].)

CMC had an established procedure for monitoring inmate mail. (Pen. Code, § 2601, subd. (b).) California Code of Regulations, title 15, section 3138 is entitled "General Mail Regulations" and states in pertinent part: "(a) All nonconfidential inmate mail is subject to being read in its entirety or in part by designated employees of the facility before it is mailed for or delivered to an inmate." Appellant was aware of the prison mail policy and warned friends that "these people read and study every word" and that "they read all mail." (E.g., *United States v. Wilson* (9th Cir. 1971) 447 F.2d 1, 7-8 [guarded language in inmate's letter supported finding of no expectation of privacy].)

Nevertheless, appellant relies upon *United States v. Cohen* (2d Cir. 1986) 796 F.2d 20 and argues that the mail monitoring violated his Fourth Amendment rights. In *Cohen*, the prosecutor initiated the search of an inmate's cell, a pretrial detainee, to bolster the People's case and to support a superseding indictment. The federal court reversed an order denying suppression stating that "it is plain that no institutional need is being served. Were it a prison official that initiated the search of Barr's cell, established decisional law holds that the search would not be subject to constitutional challenge, regardless of whether security needs could justify it." (*Id.,* at p. 24.) But where, as here, "the search was initiated by the prosecution solely to obtain information for a superseding indictment" (*ibid.*) an inmate retains an expectation of privacy.

That is not what happened here. Sergeant Holland asked the CMC to monitor appellant's mail. CMC officials were not required to accede to this request. Nevertheless, the request was approved by William Pemberton, a California Department of Corrections investigator, and his superiors. The monitoring continued even after the April 14, 1999 letter was intercepted.

While the idea to initiate the monitoring of mail was Sergeant Holland's, it was not "solely" to obtain evidence to "bolster" the People's case. (*United States v. Cohen, supra,* 796 F.2d at p. 22.) This case needed no bolstering at all. Appellant was caught "red-handed," or perhaps more appropriately "red-mouthed" and "red-shoed."[1] Appellant offered no explanation for how these items came to be lodged in his mouth and shoes. We cannot conceive of an innocent explanation therefor.

Here, the trial court reasonably concluded that the mail monitoring was motivated by and was a bona fide prison security measure. (See *Pell v. Procunier* (1974) 417 U.S. 817, 823 [94 S.Ct. 2800, 2804, 41 L.Ed.2d 495, 502] ["[C]entral to all other corrections goals is the institutional consideration of internal security"]; *Estes v. Rowland* (1993) 14 Cal.App.4th 508, 538-539 [17 Cal.Rptr.2d 901] [smuggling contraband in prisons is a "grave problem"].) "A right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order. We are satisfied that society would insist that the prisoner's expectation of privacy always yield to what must be considered the paramount interest in institutional security." (*Hudson v. Palmer* (1984) 468 U.S. 517, 527-528 [104 S.Ct. 3194, 3201, 82 L.Ed.2d 393, 404], fn. omitted.)

The trial court's ruling is supported by substantial evidence. The CMC authorities knew that appellant's stash of drugs had been seized. They reasonably believed that he was a narcotics trafficker. They had a duty to keep him from securing more drugs. It was reasonable to monitor appellant's mail to see if he was in the process of soliciting more drugs by mail. They were not fishing for appellant to make damaging admissions as to the February 22, 1999 seizure. A prisoner's theoretical expectation of privacy simply yields to the institutional security of the prison. Any other ruling would allow an incarcerated narcotics trafficker to "shop by mail."

---

[1] The phrase "red-handed," derives from "the idea of a murderer caught with the blood of his [or her] victim on his [or her] hands: in the act of committing or exhibiting evidence of having committed a crime or misdeed . . . ." (Webster's New Internat. Dict. (3d ed. 1981) p. 1902, col. 3.)

The judgment is affirmed.

Coffee, J., and Perren, J., concurred.

Appellant's petition for review by the Supreme Court was denied November 29, 2000.