Filed 7/18/13  P. v. Oliphant CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JOHN JOSEPH OLIPHANT,<br><br>    Defendant and Appellant. | A136107<br><br>(Contra Costa County<br>Super. Ct. No. 50716829) |

## I. INTRODUCTION

After a several-day jury trial, appellant was convicted on 10 drug-related counts, including possession for sale and transportation of heroin, oxycodone, methadone and morphine, possession of methamphetamine, and one count of being under the influence of methamphetamine.  He appeals, claiming there was a lack of substantial evidence to support his conviction on three of those 10 counts.  We reject that argument and affirm appellant's convictions.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Shortly before noon on January 18, 2006, Officer Josh Vincelet, a narcotics detective with the Antioch Police Department, saw appellant, then 26 years old, driving a Cadillac into a gas station in a "high crime" area of Antioch.  Also in the car was Kelly Walden-Downs, who the officer recognized as appellant's girlfriend.  He then saw a group of transients "milling around" that gas station.  As appellant pulled his car into the station's car wash, they moved toward it.  One of them, who Officer Vincelet recognized as a known narcotics user, Michael Onate, came to the car door and handed appellant

1

cash; appellant then handed Onate "an object." According to the officer, this interaction was "indicative of a hand-to-hand drug deal."

Later that same afternoon, Officer Vincelet obtained a search warrant authorizing the search of appellant, his apartment, his mother Judy Donnell, and his Cadillac. When Vincelet and at least five other Antioch officers arrived at appellant's apartment at about 4:30 p.m. the same afternoon, both appellant and Walden-Downs were present, but not appellant's mother, Ms. Donnell. The officers duly conducted a search of the apartment and found several used hypodermic needles of the kind usually used to administer heroin. Appellant told the officers that the needles belonged to his mother. The officers also found a "pay-owe" ledger on a dresser in a bedroom. Such records are, per Officer Vincelet's testimony, often used by drug dealers to record who has paid for drugs and to whom they still owe money. This ledger contained a list of names, numbers and various commonly-used terms for narcotics.

As the officers searched the apartment, a cell phone lying on a bed—later identified as possibly belonging to appellant's mother—rang. Officer Vincelet answered it and recognized the voice of Onate as the caller. Onate used appellant's name, i.e., "John," and asked if he could get a "20" of "tar." Several other calls of the same nature were received on the same cell phone, all using the name "John" and also asking for various quantities of the same drug; none of the callers asked to speak with appellant's mother. One of the callers was a woman who identified herself as "Tina" and inquired about obtaining Xanax. Vincelet, pretending to be appellant, asked Tina where the mother, Ms. Donnell, might be located; Tina provided him with the name of a hotel, the El Dorado Hotel in Pittsburg, and the mother's room number.

On the way out of the apartment, Officer Vincelet searched appellant's car and found a second cell phone; at trial he opined that drug dealers often have several cell phones and provide different numbers to different customers to avoid police detection.

Officer Vincelet conducted a probation search of Ms. Donnell's room at the El Dorado Hotel later that same day; in it, he discovered hypodermic needles, cotton balls, packaging material, spoons, a digital scale, a glass pipe, and letters addressed to Ms.

Donnell.  During this search, someone entered the room, asked for Ms. Donnell, and stated that he needed "a 20."

The following day, i.e., January 19, 2006, at approximately 2:00 p.m., Officer Vincelet saw appellant driving a different car, a Toyota Corolla, with Ms. Walden-Downs in the passenger seat.  Vincelet drove to appellant's apartment building and, when appellant arrived in the Corolla, the two met and talked briefly about the search warrant. During that conversation, Vincelet noted that appellant appeared to be under the influence of drugs in that, among other things, he was perspiring, his lips appeared to be cracked, and he was talking very hurriedly.  The officer took appellant into custody, searched him, and then searched the Corolla via the keys to it he had found in appellant's pocket.  In the Corolla, Vincelet found a plastic grocery bag containing many drugs, i.e., methadone tablets, black tar heroin, Oxycodone tablets, morphine pills, and methamphetamine.  Also in the same grocery bag was another notebook containing "more pay-owe type information" including specific letters and numbers next to them. Near the bag was a copy of the search warrant served the preceding day and a letter addressed to appellant.

All in all, Vincelet later opined, the value of the drugs in the bag in the Corolla was between $9,000 and $10,000, and the various drugs in the car were intended for later sale by appellant.

After his arrest on January 19, appellant's blood was drawn, and tested positive for methamphetamine, but negative for other drugs.

On October 24, 2007, the Contra Costa District Attorney's office filed a 10-count indictment against appellant charging him with four counts of possessing illegal drugs (namely, heroin, Oxycodone, methadone, and morphine) for sale in violation of Health and Safety Code section 11351 (hereafter section 11351), and four counts of selling and transporting the same four drugs in violation of Health and Safety Code section 11352, subdivision (a).  The ninth count of the indictment charged possession of methamphetamine in violation of Health and Safety Code section 11377, subdivision (a), and the tenth count with being under the influence of that drug in violation of Health and

3

Safety Code section 11550, subdivision (a). The indictment also contained an allegation that appellant was ineligible for probation because of his possession of 14.25 grams or more of heroin for sale under Penal Code section 1203.07, subdivision (a)(1).

A jury trial commenced on June 29, 2009; Officer Vincelet testified for the prosecution regarding the events of January 18 and 19, 2006. Also testifying for the prosecution were three forensic services specialists employed by the Contra Costa County Sheriff's Department.

On July 6, 2009, the trial court granted appellant's motion for acquittal (pursuant to Penal Code section 1118.1) of the "selling" component of the four counts of the indictment (Nos. 2, 4, 6 and 8) alleging "sale and transportation," although it kept before the jury the transportation component of those four counts.

Appellant testified in his own defense on July 6. His testimony was, essentially, that his mother, Ms. Donnell, was the real drug trafficker, and that he was only secondarily involved in the drug transactions. More specifically, he testified that, on January 18, 2006, she, being a heroin addict as he admittedly was also, came to his apartment to "shoot [him] up", because he was too "scared to be able to do it" himself. He conceded, however, that he had sold heroin to Onate at the gas station that day, but had done so at the request of his mother.

As far as the search of the apartment later that day, i.e., the search that uncovered the "pay-owe" ledger, appellant testified that this belonged to his mother, Ms. Donnell, as did the cell phone the police had found in the bedroom—although he conceded that he had occasionally used that phone. He denied that his mother's customers ever used him to supply drugs and that he did not do so for her.

He conceded that, after the search performed of his apartment by Officer Vincelet and the other officers, he had gone to a hotel and taken methamphetamine. He had gotten the same from a friend on his hockey team but, at trial, could not remember the friend's name. That same evening and also the next morning, per his testimony, his mother came to that room to "shoot [him] up" with heroin.

4

Per appellant's testimony, the following day, January 19, Ms. Donnell placed the grocery bag later found in the Corolla he was driving into the trunk of that car. He claimed that the drugs found in that bag were for his use and not intended for sale, except for the Oxycodone pills which belonged to him, but were available to be purchased from his mother.

No other evidence was presented by appellant.

On July 8, 2009, after less than a day of deliberation, the jury convicted appellant on all 10 counts and found true the allegation that he has possessed 14.25 grams or more of heroin for sale. Appellant was not present when the jury returned its verdict; he had apparently fled to Nevada. He was, however, later extradited and placed in jail on May 23, 2012.

On June 29, 2012, the court denied appellant probation and imposed a midterm sentence of three years in prison on the first count of the indictment. It imposed concurrent midterm sentences in the same amount, i.e., three years, on counts 2 through 8 and a concurrent midterm of two years on count 9 and a concurrent one year on count 10. It awarded appellant a total of 200 days of credit for time already served.

Appellant filed a timely notice of appeal on July 17, 2012.

### III. DISCUSSION

Appellant's only argument is that there was not substantial evidence to support his conviction on three of the 10 counts on which the jury found him guilty, i.e., counts 1, 5, and 7, the counts alleging the possession for purposes of sale of, respectively, heroin, methadone, and morphine. He does not contend that his convictions on the other seven counts should be reversed, but does ask that, if we agree that his convictions on these three counts should be reversed because of the lack of substantial supporting evidence, the case should be remanded to the trial court with the direction that it grant him probation.

We must and will, therefore, start with the issue of the applicable standard of review, i.e., whether there was substantial evidence supporting appellant's convictions on counts 1, 5, and 7. Our Supreme Court has made that standard very clear in several

5

decisions. Thus, in *People v. Caitlin* (2001) 26 Cal.4th 81, 139, it stated: "A reviewing court faced with such a claim determines 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' [Citations.] We examine the record to determine 'whether it shows evidence that is reasonable, credible and of solid value from which a rational trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citation.] Further, 'the appellate court presumes in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.' [Citation.] This standard applies whether direct or circumstantial evidence is involved. 'Although it is the jury's duty to acquit a defendant if it finds the circumstantial evidence susceptible of two reasonable interpretations, one of which suggests guilt and the other innocence, it is the jury, not the appellate court that must be convinced of the defendant's guilt beyond a reasonable doubt. [Citation.] " 'If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment.' " ' [Citation.]"

A bit later that same year, the court summarized the relevant standard a bit more briefly: "To determine the sufficiency of the evidence to support a conviction, an appellate court reviews the entire record in the light most favorable to the prosecution to determine whether it contains evidence that is reasonable, credible, and of solid value, from which a rational trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Kipp* (2001) 26 Cal.4th 1100, 1128; see also *People v. Prince* (2007) 40 Cal.4th 1179, 1251; *People v. Bolden* (2002) 29 Cal.4th 515, 553; 6 Witkin & Epstein, Cal. Criminal Law (4th ed., 2012) Criminal Appeal, § 169, and authority cited therein.)

In *People v. Parra* (1999) 70 Cal.App.4th 222 (*Parra*), our colleagues in the Fourth District addressed the issue of whether, for a conviction to be affirmed under section 11351, it is necessary for the prosecution to establish that it was the possessing-defendant's intent to sell the drugs personally as distinguished from having someone else sell it for them. It held that either was sufficient, stating: "[W]e conclude that in order to

6

be convicted of a violation of . . . section 11351 the defendant needs to either (1) possess the specific intent to sell the controlled substance personally, or (2) possess the specific intent that someone else will sell the controlled substance." (*Parra* at p. 227; see also *People v. Consuegra* (1994) 26 Cal.App.4th 1726, 1731-1732 and fn. 4.) Further, "[i]intent to sell may be established by circumstantial evidence." (*People v. Harris* (2000) 83 Cal.App.4th 371, 374 (*Harris*).)

Finally with regard to our standard of review, the law is also clear that an officer as experienced as Officer Vincelet may state his opinions regarding the intent of the possessor or possessors of the drugs in question. (See *Parra, supra,* 70 Cal.App.4th at p. 227.) Indeed, in an opinion quoted by the *Parra* court, our Supreme Court made this point abundantly clear. (See *People v. Newman* (1971) 5 Cal.3d 48, 53, disapproved on other grounds in *People v. Daniels* (1975) 14 Cal.3d 857, 862; see also *People v. Peck* (1996) 52 Cal.App.4th 351, 357, and *Harris, supra,* 83 Cal.App.4th at pp. 374-375.) The testimony, including the opinions stated, of Officer Vincelet clearly meets the required substantial evidence standard of review as to appellant's possession for the purpose of sale of the three drugs which were the subjects of counts 1, 5 and 7.

Appellant's core position as to why we should reverse his convictions on those three counts is that the jury's verdict had to be based on "suspicion" and "circumstantial evidence," and that such did not amount to the required substantial evidence. He summarizes this contention thusly: "Suspicion merely raises a possibility of guilt and is not a sufficient basis for a conviction. . . . Moreover, there was no direct evidence that Mr. Oliphant possessed any of these substances [i.e., heroin, methadone, and morphine] with the specific intent to sell them." Thus, he contends, the jury's conclusion that he possessed these three drugs for sale was "unreasonable."

With regard to appellant's conviction on count 1 (possession of heroin for sale), appellant concedes that he used that drug, but contends that the evidence admitted "supports only his possession of the drugs for personal use." Regarding his convictions regarding possession of methadone and morphine for purposes of sale, appellant contends that the only evidence supporting his conviction on these two counts was the opinion

evidence offered by Officer Vincelet, and that, therefore, there was "no hypothesis under which the Court can find that there was substantial evidence to support" those two convictions.

We strongly disagree. As noted above, our Supreme Court has made it abundantly clear that a conviction may be—and indeed must be—affirmed if there is substantial evidence to support it. Further, and as appellant points out in his opening brief to us, the jury was specifically instructed (via CALCRIM No. 224) that "[B]efore you may rely on circumstantial evidence to find the defendant guilty, you must be convinced that the only reasonable conclusion supported by the circumstantial evidence is that the defendant was guilty." As our Supreme Court has also made clear, "[j]urors are presumed able to understand and correlate instructions and are further presumed to have followed the court's instructions." (*People v. Sanchez* (2001) 26 Cal.4th 834, 852.) Thus, because it convicted appellant on the three counts at issue on this appeal, the jury must have found either that (1) such was the only reasonable conclusion to be drawn from the circumstantial evidence before it or (2) there was more than just circumstantial evidence supporting appellant's conviction.

And, indeed, there was more, much more, than "suspicion" or "circumstantial evidence" supporting the jury's verdict on the three counts from which appellant appeals.

First, the day before his arrest, Officer Vincelet personally witnessed what he described as a "hand-to-hand drug deal" at a car wash in Antioch, a deal in which appellant specifically received money from Michael Onate. Indeed, when he was on the witness stand, appellant specifically conceded that he had provided heroin to Onate as witnessed by Officer Vincelet.

Second, the same afternoon, when multiple officers were searching appellant's apartment, a cell phone found in the bedroom of that apartment rang several times. Officer Vincelet answered it, the callers (one being Onate) all assumed they were speaking with "John," and made specific requests for drugs. Appellant argues that the cell phone in the apartment belonged to appellant's mother, Ms. Donnell, but the reality is that all of the callers assumed the answering male was "John" and attempted to arrange

8

a drug transaction directly with him; none of them ever asked to speak with "Judy." Nor was the discovery of another cell phone in the Cadillac appellant had been driving pertinent because, as Officer Vincelet testified, a "lot of times dealers carry more than one phone . . . so they can avoid detection from law enforcement . . . ."

Third, the following day, appellant drove to his apartment in another car, a Toyota Corolla, the keys to which Officer Vincelet later found in appellant's pocket. Using those keys, the officer opened the trunk of the Corolla and found a plastic grocery bag containing the large amount of multiple drugs described above, including over 19 grams of black tar heroin. Vincelet testified that, in his estimation, the value of the drugs found in the trunk of the Corolla was "around the ballpark of" $9,000 to $10,000. Regarding whether the 19.61 grams of heroin might have been for appellant's personal use, Vincelet testified that the "typical dosage" of heroin was "a tenth of a gram." Thus, the heroin found in the car appellant was driving on the day he was arrested equaled almost 200 "typical" dosages. This evidence hardly supports appellant's personal use theory of defense.

Fourth, Officer Vincelet testified that, in his opinion, the methadone found in the bag in the Corolla "was possessed for sale", as was the heroin, and the morphine. No objections to these opinions were lodged by trial defense counsel, and Officer Vincelet did not retract these opinions even slightly in the course of cross-examination by that counsel When asked by the prosecutor what led him to his opinions that "all those items were possessed for sell [sic: sale]," he responded:

"I base my opinion on first the amounts such as the oxy as well as the heroin. And then to factor in the packaging, the pay-owe sheets and then the behavior that I saw leading up to the search warrant. [¶] All of those factor into even the smaller amounts that may be just possessing one pill. Those morphine pills that you talked about were in a smaller amount in and around the one to two pills. [¶] As I said before, they were rare so only having one to two pills isn't uncommon so that would further lead me to believe that those were possessed for sell."

Later, on redirect examination, Officer Vincelet summarized his opinion thusly: "[I]f you are buying in bulk your intent is to turn a profit off of that. You are not going to buy in bulk for personal use." As noted above—and not contested either at trial or in appellant's briefs to us—Officer Vincelet was fully qualified to offer these opinions.

Fifth and finally, when the grocery bag full of all the drugs was found in the Corolla appellant was driving the day he was arrested, the police also found, next to the plastic bag containing the drugs, both an envelope addressed to appellant and the search warrant that had been served on him the preceding day. Contrary to appellant's argument in his reply brief, that evidence did, indeed, "contradict [appellant's] testimony that the drugs belonged to his mother and were dumped in the trunk of [the Corolla] a short time prior to the search." Additionally, inside that bag was another pay-owe sheet of the kind, per Officer Vincelet again, used by drug dealers.

In his briefs to us, appellant essentially reargues the evidence before the jury, more specifically the version of events testified to by the only witness produced at trial for the defense: appellant himself. His testimony was that his mother was the real dealer of drugs, and that she had placed the large plastic bag full of the various drugs in the trunk of the Corolla he was driving on January 19, 2006. But they were, according to his testimony in the trial court, for his use, and provided to him in such bulk because that quantity was "all she could get" from her suppliers. Thus, per appellant's argument to us, his mother simply "dumped [the drugs] into the trunk of the car he was driving while she was trying to 'get out of town.'"

However, as noted above, there was absolutely no corroboration of appellant's version of events, a version that was full of inconsistencies. By way of example, appellant first testified that his mother was "holding on to" the heroin she injected him with, but then admitted that he would "snort it if she wasn't there." Similarly, and as pointed out to the jury in the prosecutor's closing argument, the buyers who called on the cell phone in his apartment were persons who were allegedly his mother's customers, but all of them clearly knew his name and that they could rely on him to obtain the drugs they requested; none of them asked to speak to his mother.

There was far more than the requisite substantial evidence to sustain the jury's finding that appellant was guilty of the crimes charged in counts 1, 5, and 7 of the indictment.

## IV. DISPOSITION

The judgment is affirmed.


_____
Haerle, J.


We concur:


_____
Kline, P.J.


_____
Richman, J.