Filed 8/31/15  P. v. Gabriel CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>MICHAEL JOSEPH GABRIEL,<br><br>    Defendant and Appellant. | G049813 consol. w/ G049819<br><br>(Super. Ct. Nos. 12WF0424 & 12WF1787)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, M. Marc Kelly, Judge.  Affirmed.

Fay Arfa for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, William M. Wood and Meagan J. Beale, Deputy Attorneys General, for Plaintiff and Respondent.

Michael Joseph Gabriel appeals from a judgment after a jury convicted him of possession for sale of a controlled substance. Gabriel argues insufficient evidence supports his conviction, the trial court erred in admitting expert testimony, the trial court erred in instructing the jury, and there was cumulative error. None of his contentions have merit, and we affirm the judgment.

FACTS[1]

When officers searched Gabriel's apartment in February 2012, Gabriel, who was home alone, appeared to be under the influence of methamphetamine. There was a baggie of methamphetamine on the bedroom desk. The baggie was marked with a dash. It had a gross weight of 0.4 grams and held a net weight of .072 grams of methamphetamine. A used methamphetamine pipe was lying on his bed. A cloth bag and a hard cylindrical case were also on the desk. The cloth bag held two digital scales and multiple empty clear plastic baggies. The hard cylindrical case contained eight baggies of methamphetamine.

Five of the baggies were marked with a dash, and each had a gross weight of 0.5 grams. One contained a net weight of 0.384 grams of methamphetamine. Two of the baggies were marked with a symbol with two lines, like a backward 7. Each weighed 0.7 gross grams. The eighth baggie had a gross weight of 1.2 grams and contained a net weight of 0.945 grams of methamphetamine. It was marked with a symbol with three lines, like three sides of a square.

An information charged Gabriel with possession for sale of a controlled substance (Health & Saf. Code, § 11378), and alleged he was previously convicted of the same offense (Pen. Code, § 1203.07, subd. (a)(11)). The information alleged he had

---

[1] In case No. G049819, Gabriel pleaded guilty to two drug-related offenses. Gabriel does not raise any arguments concerning that case on appeal. We will not discuss it further.

suffered three prior felony Health and Safety Code convictions (Health & Saf. Code, § 11370.2, subd. (c)).

Detective Daniel Quidort, who participated in the search, testified as an expert on methamphetamine sales. After detailing his background, training, and experience, Quidort explained factors to be considered in determining if possession is for personal use or for sale include quantity in conjunction with packaging, scales, extra baggies, pay-owe sheets, and large amounts of cash. When the prosecutor asked whether officers found anything that indicated personal use, Quidort replied a pipe. After he opined Gabriel used methamphetamine that night, the following colloquy occurred:

"[Prosecutor]: With regards to the items that [the] officer . . . provided to you, was there anything that was significant in determining whether or not . . . Gabriel possessed those drugs, not just for personal use, but also for sales?

"[Quidort]: Yes.

"[Prosecutor]: And what items were those?

"[Quidort]: Well, found, I believe, eight separate baggies of methamphetamine that was proportioned out in different weights, found two digital scales and found several excess baggies which were similar to the ones that contained the actual methamphetamine. [¶] . . . [¶]

"[Prosecutor]: The fact that you don't recall whether or not there was a phone and that there was no pay-owe sheet found, does that change your opinion with regards to whether or not . . . Gabriel possessed the methamphetamine for sales?

"[Quidort]: No.

"[Prosecutor]: And why not?

"[Quidort]: Well, if -- just due to the fact that there isn't a phone or a pay-owe sheet I don't think changes the circumstances surrounding this."

3

Quidort repeated Gabriel was probably using methamphetamine because he showed objective symptoms of methamphetamine use and there was a bag of methamphetamine and used pipe nearby. Quidort admitted the total amount of methamphetamine found was consistent with either possession for personal use or possession for sales and it "honestly . . . could go either way."

Quidort explained a typical dose of methamphetamine is about 0.05 grams and the high would last a couple hours. He said methamphetamine for personal use is usually packaged in amounts of half a gram to one gram. He stated 0.384 grams of methamphetamine, a common amount to buy, would sell for about $20 and 0.945 grams, also a common amount to buy, could sell for about $40 or $50. He explained the methamphetamine was divided into amounts suitable for sale and the digital scales, extra baggies, and division of the methamphetamine into separate marked bags were indicative of sales. In Quidort's experience, users did not keep their methamphetamine in separate marked baggies but it was common for people who sold methamphetamine to be users and for users to sell methamphetamine to get money to buy drugs. Based on a hypothetical question matching the facts of the case, including that there were no pay-owe sheets or significant cell phones, Quidort opined the methamphetamine was possessed for sale based on the separate packaging by weight and symbol.

Gabriel testified in his own defense. He denied possessing the methamphetamine for sale and claimed he possessed all the methamphetamine for his personal use. Gabriel said he had smoked methamphetamine in a glass pipe just before the police arrived to search his house. He admitted he had smoked methamphetamine for many years. He usually bought a two-week supply, three and a half grams at a time, or an eight-ball, which cost between $120 and $150. He thought he bought an eight-ball of methamphetamine earlier that day but could not remember who he bought it from. Gabriel bought the large quantity to save money; it would cost him $20 per day to buy his usual daily dosage, 0.2 grams, each day. He divided the methamphetamine into separate

4

baggies and marked them so he could measure out his daily use and not over-spend on methamphetamine. He explained the dash represented 0.2 grams, the amount he used every weekday. The 7-type mark represented 0.4 grams, an amount he used on weekends. The third symbol, three lines in the form of a square missing the top line, was on the bag that held the methamphetamine he had not divided yet. He used the digital scales each week to divide his methamphetamine into separate amounts for that week. Gabriel admitted he had four felony convictions involving moral turpitude.

The trial court instructed the jury with the elements of the crime and the lesser included offense (CALCRIM Nos. 2302 & 2304), reasonable doubt (CALCRIM No. 220), how to evaluate expert testimony (CALCRIM No. 332), that the jury's verdict must be unanimous (CALCRIM No. 3550), and how to evaluate Gabriel's prior convictions (CALCRIM No. 316). When the trial court stated it did not think CALCRIM No. 3500, "Unanimity," was required, both the prosecutor and defense counsel agreed.

The jury submitted a number of questions to the trial court. As relevant here, the jury asked, "Regarding the previous felonies, what is the definition of 'moral turpitude'?" Over defense counsel's objection, the trial court instructed the jury "moral turpitude means a readiness to do evil[,]" citing to *People v. Castro* (1985) 38 Cal.3d 301, 314 (*Castro*).

The jury convicted Gabriel of possessing methamphetamine for sale. After finding Gabriel had suffered the three prior convictions, the trial court sentenced him to the upper term of three years in county jail for the offense and struck the sentences on the prior convictions.

DISCUSSION

I. *Sufficiency of the Evidence*

Gabriel argues insufficient evidence supports his conviction for possession for sale of a controlled substance. We disagree.

5

Unlawful possession of a controlled substance for sale requires proof the defendant possessed the substance with the intent to sell, and with knowledge of its presence and its illegal character. (*People v. Harris* (2000) 83 Cal.App.4th 371, 374 (*Harris*).) "Intent to sell may be established by circumstantial evidence." (*Ibid.*) "'In cases involving possession of [drugs], experienced officers may give their opinion that the narcotics are held for purposes of sale based upon such matters as the quantity, packaging and normal use of an individual; on the basis of such testimony convictions of possession for purpose of sale have been upheld. [Citations.]' [Citation.]" (*Id.* at pp. 374-375.) We must determine whether the record contains circumstantial evidence that is reasonable, credible, and of solid value from which the jury could reasonably conclude Gabriel possessed the methamphetamine for sale.

Here, both the evidence found at Gabriel's home and Quidort's expert testimony provided the jury with reasonable, credible, and solid evidence from which it could reasonably conclude Gabriel possessed the methamphetamine for sale. At his home, officers found eight baggies of methamphetamine packaged in amounts suitable for sale. The baggies were marked to show the quantity of methamphetamine in each bag. Additionally, officers found two digital scales and extra baggies, both of which are commonly used for sales of controlled substances. The jury could rely on this evidence alone to conclude Gabriel possessed the methamphetamine for sale. Moreover, Quidort, an expert on drug sales, opined that based on all the circumstances the drugs were possessed to sell. Quidort was quite candid. He stated that based on the quantity alone, "it could go either way." But based on the packaging and marks on the separate baggies, and the digital scales, he concluded the methamphetamine was possessed for sale. Having heard Quidort's opinion that Gabriel intended to sell the methamphetamine, it was for the jury to credit such expert opinion testimony or reject it. (*Harris, supra,* 83 Cal.App.4th at p. 375.)

6

Gabriel argues the evidence was insufficient because there were no indicia of sales, i.e., cash, pay-owe sheets, weapons, surveillance equipment. As we explain above, there was indicia of sales, including eight separately packed and identified baggies of methamphetamine and two digital scales. And in arriving at his opinion, Quidort considered the fact there were no pay-owe sheets or other indicia. The jury heard this evidence, and Gabriel's testimony the methamphetamine was for his own personal use, and concluded the prosecutor's evidence was more compelling. We cannot reweigh the evidence or reevaluate the credibility of witnesses. Thus, sufficient evidence supports Gabriel's conviction for possession of a controlled substance for sale.

## II. *Expert Testimony & Ineffective Assistance of Counsel*

Gabriel contends the trial court erred by admitting expert testimony he possessed the methamphetamine for sale. Alternatively, Gabriel contends his defense counsel was ineffective for failing to object. Neither contention has merit.

"[E]xpert testimony regarding the defendant's guilt in general is improper. 'A witness may not express an opinion on a defendant's guilt. [Citations.] The reason for this rule is not because guilt is the ultimate issue of fact for the jury, as opinion testimony often goes to the ultimate issue. [Citations.] "Rather, opinions on guilt or innocence are inadmissible because they are of no assistance to the trier of fact. To put it another way, the trier of fact is as competent as the witness to weigh the evidence and draw a conclusion on the issue of guilt."' [Citations.]" (*People v. Vang* (2011) 52 Cal.4th 1038, 1048.)

Here, Quidort did not testify he believed Gabriel was guilty or merely express a general opinion as to whether a crime was committed. Rather, he testified regarding specific circumstances and conduct, which Quidort believed, based on his law enforcement experience, indicated Gabriel was selling methamphetamine. (*People v. Hunt* (1971) 4 Cal.3d 231, 237 ["it is settled that an officer with experience in the narcotics field may give his opinion that the narcotics are held for purposes of sale"].)

7

Quidort's insight of facts and circumstances indicating drug sales activity was generally beyond that of a lay person and was therefore helpful to the jury in determining whether there was sufficient circumstantial evidence to find Gabriel possessed methamphetamine for sale, as opposed to for personal use, and had the requisite specific intent to sell methamphetamine. Quidort's expert opinion testimony did not usurp the jury's function.

With respect to Gabriel's claim his defense counsel provided deficient performance because the prosecutor's questions and Quidort's testimony usurped the jury's role, we disagree. Counsel's failure to make a futile or unmeritorious objection is not deficient performance. (*People v. Riel* (2000) 22 Cal.4th 1153, 1185.) Thus, Quidort's testimony was admissible and proper.

*III. Jury Instructions*

*A. Unanimity Instruction*

Gabriel argues the trial court erred by failing to instruct the jury with CALCRIM No. 3500, "Unanimity," because some jurors could have believed he possessed the smaller quantities of methamphetamine for personal use and the larger quantities for sale. Again, we disagree.

"[I]n a prosecution for possession of narcotics for sale, where actual or constructive possession is based upon two or more individual units of contraband reasonably distinguishable by a separation in time and/or space and there is evidence as to each unit from which a reasonable jury could find that it was solely possessed by a person or persons other than the defendant," a unanimity instruction is required. (*People v. King* (1991) 231 Cal.App.3d 493, 501.) Conversely, "where criminal acts are substantially identical in nature so that a juror who believed one act took place 'would inexorably believe all acts took place,' the unanimity instruction is not necessary for the jury's resolution of the case." (*Ibid.*; *People v. Castenada* (1997) 55 Cal.App.4th 1067, 1071 [unanimity instruction required because separate defenses to distinct drug items].)

Here, the trial court did not err by failing to instruct the jury with CALCRIM No. 3500. The court instructed the jury the prosecutor had the burden to prove the charged offense, possession of a controlled substance for sale, beyond a reasonable doubt and that the jury must unanimously agree on its verdict. Officers found Gabriel at home by himself with eight baggies of methamphetamine. The act of possessing those eight bags was substantially identical in nature so that a juror who believed one act took place would inexorably believe all the acts took place because officers found the baggies in the same location and there was no one else present. There is no requirement the jury identify which bag was for sale and which bag was for personal use. (See *People v. Wright* (1968) 268 Cal.App.2d 196, 198 [not necessary to instruct jury must all agree which specific items of narcotics defendant possessed so long as they all agreed he possessed usable amount].) And there is simply no possibility that some jurors only concluded Gabriel possessed the baggies for his personal use because the instructions required the jury to unanimously agree he possessed the methamphetamine with the specific intent to sell it. Simply put, there was no risk the jury may divide on two discrete crimes and not agree on any particular crime. Thus, the court did not err by failing to instruct the jury with CALCRIM No. 3500 on unanimity.

B.  *Jury Instruction*

Gabriel asserts the trial court erred by instructing the jury moral turpitude means a readiness to do evil. Not so.

In *Castro, supra,* 38 Cal.3d 301 at page 306, our Supreme Court concluded only prior convictions for crimes involving moral turpitude were admissible to impeach a witness's credibility. The court equated moral turpitude with a readiness to do evil, reasoning a crime involving moral turpitude has some bearing on credibility. (*Ibid.*)

Here, the trial court provided the jury with a correct definition of moral turpitude as "a readiness to do evil," a definition consistent with that provided by the California Supreme Court in *Castro*. The court instructed the jury with

9

CALCRIM No. 316, which told the jury it could consider Gabriel's convictions only on the issue of his credibility. The court's definition of moral turpitude was proper and thus the court properly instructed the jury.

*IV. Cumulative Error*

Gabriel contends the cumulative prejudicial effect of the errors requires reversal. We have concluded there were no errors. Thus, Gabriel's argument the cumulative prejudicial effect of the errors requires reversal is meritless.

DISPOSITION

The judgment is affirmed.

O'LEARY, P. J.

WE CONCUR:


RYLAARSDAM, J.


BEDSWORTH, J.