Filed 6/12/23  P. v. Lewis CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, Plaintiff and Respondent, v. ANDREW TERREL LEWIS, Defendant and Appellant. | B321109 (Los Angeles County Super. Ct. No. TA152990) |

APPEAL from an order of the Superior Court of Los Angeles County.  Michelle M. Ahnn, Judge.  Affirmed.

Olivia Meme, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Steven D. Matthews and Ryan M. Smith, Deputy Attorneys General, for Plaintiff and Respondent.

\* \* \* \* \* \* \* \* \* \*

A jury convicted defendant and appellant Andrew Terrel Lewis of one count of possession for sale of a controlled substance. Defendant contends the court prejudicially erred by excluding third party culpability evidence and that the verdict is not supported by substantial evidence.

We affirm.

## FACTUAL AND PROCEDURAL SUMMARY

Defendant was charged with one count of possession for sale of methamphetamine (Health & Saf. Code, § 11378). It was also alleged defendant had suffered a prior strike conviction in 2010 (a violation of Pen. Code, § 207 arising from a domestic violence incident).

At the start of trial, defendant made a request to present third party culpability evidence. We summarize the relevant facts in part 1.a. of the Discussion, *post*.

The testimony at trial established the following facts regarding the charged offense. Around midnight on September 16, 2020, Officer Carlos Tovar of the Los Angeles Police Department (LAPD) was on patrol with his partner, Officer Alex Casillas. They were driving in the vicinity of 88th Street and Menlo in Los Angeles, an area known for narcotics activity.

Officer Tovar saw a Mazda parked illegally in a red zone on the north side of 88th Street. There was a light on in the interior of the car. Officer Casillas stopped near the Mazda and Officer Tovar, who was wearing a body camera, got out and approached the driver's side of the car. He asked defendant, who was seated in the driver's seat of the Mazda, for his identification. Defendant was cooperative. He gave his license to Officer Tovar and told him the car was a rental car so he did not have

2

registration.  There was a male passenger in the front seat and a female in the back seat.

Officer Casillas attempted to get identification from the male passenger who was wearing a Michael Jordan jersey and was being uncooperative.  He was unable or unwilling to produce any form of identification.  He eventually provided a name to the officers.  It was later determined the male passenger was Louis Henry Watson and he had provided a false name at the scene.

Defendant and both of his passengers were told to get out of the car.  Defendant complied and consented to a patdown search.  He did not have any weapons.

Officer Tovar told defendant to stand off to the side near a wall and then went to the passenger side of the car to assist Officer Casillas.  Once they were able to get the male passenger to step out of the car, it was discovered he was wearing a taser on his hip.  He was told to stand near defendant next to the wall, as was the female passenger.

Officer Tovar then searched the car, starting with the front passenger seat area.  On the floorboard, he found a glass pipe with white residue "resembling methamphetamine" and a lunch pail containing a lighter and numerous small clear plastic baggies, all of which were empty.  A cell phone was found in the passenger door panel.  The back seat contained nothing of interest.

The trunk was "cluttered" and contained clothes, shoes, miscellaneous papers, a number of plastic shopping bags and a red backpack with a Michael Jordan logo.  Officer Tovar found a scale inside the backpack.

From the driver's seat area, Officer Tovar collected three empty plastic baggies.  He had seen them on the seat when

defendant initially got out of the car. Officer Tovar also found a slightly larger plastic bag "[w]edged in between the center console" and the driver's seat. The bag contained a "crystal-like substance" which was later analyzed and determined to be 8.97 grams of methamphetamine.

The two passengers were not cited and were allowed to leave with their cell phones. Before leaving, the male passenger asked to retrieve his belongings, and he was allowed to take multiple plastic shopping bags that had been in the trunk.

Defendant was taken to the station and booked. An inventory search of his personal items included his wallet which contained money in the amount of $2,734.31, including 45 twenty-dollar bills.

Redacted portions of the footage from Officer Tovar's body camera were played for the jury.

Officer Richard Larson testified to his training and years of experience as a member of the LAPD's narcotics enforcement detail, including working on numerous multi-agency task forces investigating drug trafficking and various drug-related crimes. In response to a hypothetical question posed to him based on the facts of the case, Officer Larson said the baggies, the scale, and the quantity of methamphetamine found in the car indicated the drugs were possessed for purposes of sale. The fact that a large amount of money, including numerous $20 bills, was recovered with those items further supported an intent to sell. Officer Larson said that in the area where the detention occurred, methamphetamine was normally packaged in 1 gram quantities and sold for approximately $20, referred to in street vernacular as a "dub." In his opinion, it would be unusual for someone to be in possession of 9 grams of methamphetamine solely for personal

4

use, as even a "hard core" meth user would ordinarily consume around 1 gram or 1.5 grams per day. A hard-core user would have the recognizable characteristics of someone who regularly abused methamphetamine, including sunken eyes, missing teeth and open sores.

Defendant did not testify and did not present any witnesses.

During deliberations, the jury made several requests. They asked to rewatch the body camera footage and asked for a clarification of the phrase "intent to sell." The footage was replayed for the jury and they were told to refer back to the jury instructions on the issue of intent. After further deliberations, the jury asked how they should proceed since they were divided, with six votes for guilt on count 1 and six votes for the lesser offense of simple possession. When asked by the court if there was anything it could do to assist them in further deliberations, the jury asked for additional argument on "intent to sell" and how the backpack and scale were connected to defendant. The parties provided additional argument limited to those two issues.

The jury continued their deliberations and then returned a verdict finding defendant guilty as charged. The court sentenced defendant to a 16-month low term to be served in county jail. Defendant was credited with 17 days of presentence custody credits (nine actual, eight conduct) and fines and fees were waived.

This appeal followed.

## DISCUSSION

### 1. Third Party Culpability Evidence

Defendant contends the court committed reversible evidentiary error by excluding his third party culpability evidence. We disagree.

#### a. Background

On the third day of trial, defense counsel informed the court in the morning that her investigator had e-mailed her a report about an interview he had conducted two days earlier of a woman named Barbara Carter. Counsel provided copies of the report to the court and prosecutor and advised the court she wished to present Ms. Carter as a witness. She said Ms. Carter would provide testimony regarding an incident with Louis Henry Watson, the same person who had been in the front passenger seat of the car on the day defendant was arrested and had been allowed to leave. Ms. Carter told the investigator she had been with Mr. Watson in his car sometime before the incident involving defendant. Mr. Watson had been driving and was pulled over by a police officer. Before the officer walked up to the car, Mr. Watson unexpectedly tossed a handgun into Ms. Carter's lap. She was scared and did not know what to do, so she hid the gun in her sweatpants. The gun was not discovered, and Ms. Carter was not arrested.

The court asked the date when the incident allegedly occurred and whether it involved any of the same officers involved in the arrest of defendant. Defense counsel said she had no further details about the incident and would have to ask her investigator.

Defense counsel argued Ms. Carter's testimony was admissible third party culpability evidence because it showed

6

Mr. Watson was willing to cast blame on others for his contraband when confronted by police. Defense counsel said that during the incident here, Mr. Watson gave a false name to the police and was generally uncooperative. A glass pipe, plastic baggies, a cell phone and a flashlight were found on the floor where Mr. Watson was seated, and it was reasonable to infer the methamphetamine found in the car was his. He claimed ownership of multiple plastic shopping bags from the trunk where the backpack with the scale was located, but the police allowed him to leave the scene with those bags and his cell phone and without anyone attempting to verify his identity.

The court asked counsel whether she anticipated any testimony connecting Mr. Watson specifically to the drugs found in the car, such as evidence he made movements toward the driver's seat to hide the drugs as Officer Tovar approached. Defense counsel said she had been unable to locate Mr. Watson to subpoena him for trial and did not anticipate calling the female passenger who had been in the back seat.

The court excluded the proffered evidence, reasoning that the incident described by Ms. Carter had low relevance to the facts of the case against defendant because it involved a handgun and not narcotics, and because it would cause an undue consumption of time, requiring a minitrial on the other incident.

b.    **Applicable law**

In *People v. Dworak* (2021) 11 Cal.5th 881, 895 (*Dworak*), the Supreme Court said, "[w]e have rejected any special rule governing evidence of third party culpability, explaining that 'courts should simply treat third-party culpability evidence like any other evidence: if relevant it is admissible ([Evid. Code,]

7

§ 350) unless its probative value is substantially outweighed by the risk of undue delay, prejudice, or confusion ([*id*.,] § 352).' "

Evidence tending to show a third party committed the crime is relevant. (*People v. Brady* (2010) 50 Cal.4th 547, 558 (*Brady*).) The evidence must be capable of raising a reasonable doubt as to the defendant's guilt, but need not amount to " ' "substantial proof of a probability" ' " the third party actually committed the crime. (*Dworak, supra*, 11 Cal.5th at p. 895.) Evidence of mere motive or opportunity is not sufficient to raise a reasonable doubt. (*Ibid*.) " '[T]here must be direct or circumstantial evidence linking the third person to the actual perpetration of the crime.' " (*Ibid*.; accord, *People v. Bracamontes* (2022) 12 Cal.5th 977, 1001 [" 'We have repeatedly upheld the exclusion of third party culpability evidence when the third party's link to a crime is tenuous or speculative.' "].)

Third party culpability evidence "that is relevant still may be excluded if it creates a substantial danger of prejudicing, confusing, or misleading the jury, or would consume an undue amount of time." (*Brady, supra*, 50 Cal.4th at p. 558; see also Evid. Code, § 352.)

We review the trial court's ruling excluding the evidence under the deferential abuse of discretion standard. (*Dworak, supra*, 11 Cal.5th at p. 895; accord, *Brady, supra*, 50 Cal.4th at p. 558.)

**c. Analysis**

In *Dworak, supra*, 11 Cal.5th at page 895, the Supreme Court upheld the exclusion of third party culpability evidence by the trial court which had, like the court here, found the probative value of the proffered evidence of two different third parties to be

substantially outweighed by the risk of undue delay, prejudice or confusion.

The female murder victim in *Dworak* was found on a deserted stretch of beach. (*Dworak*, *supra*, 11 Cal.5th at p. 887.) She had last been seen alive at a party at the home of Robyn Jones, the mother of a friend of hers. (*Id*. at p. 894.) The defendant sought to introduce evidence regarding two individuals associated with that home, Jay Campbell and Danny Carroll. (*Ibid*.) The evidence included a pair of Campbell's jeans found in a bucket of sandy water at the home. Campbell said his jeans had gotten sandy during a date at the beach with his girlfriend, and he had changed clothes at Jones's home afterward. (*Ibid*.) As to Carroll, a local drug dealer, the defendant sought to introduce testimony from Jones that Carroll had written a letter "musing" about what might have happened to the victim, as well as testimony from Jones's son that Carroll had stolen his mother's car on the night the victim went missing, and when it was recovered, the car was full of sand. (*Ibid*.)

*Dworak* concluded the trial court had not abused its discretion in excluding the evidence related to both Campbell and Carroll, explaining "there was no evidence placing Carroll in proximity to [the victim] at the time of her death, and any link between the jeans found in Jones's garage and [the victim's] death rested on speculation. Although the jeans could be seen as circumstantial evidence that Campbell was involved in [the victim's] death, such an inference requires speculation that the sand and water on the jeans were from the beach on which [the victim's] body was found, combined with additional speculation that this was the result of Campbell's presence at [the victim's] murder and not, as Campbell stated, a separate visit to the beach

9

that same weekend. The trial court reasonably concluded that the probative value of this evidence related to Carroll and Campbell, which produced only speculative inferences, was substantially outweighed by the risk that it would cause undue delay, prejudice, or confusion." (*Dworak*, *supra*, 11 Cal.5th at p. 895.)

Similarly here, the evidence that Mr. Watson, the male passenger in the car with defendant at the time of the charged incident, may have, at some unspecified previous time, tossed a handgun into the lap of Ms. Carter when he was pulled over in an unrelated traffic stop was not sufficiently probative to warrant consuming trial time and confusing the jury. Defendant has not established the trial court abused its discretion in excluding the testimony of Ms. Carter.

### d.     Substantial evidence

Defendant contends his conviction is not supported by substantial evidence. He says there is insufficient evidence as to both possession and intent to sell. We review the record under the familiar standard. (See *People v. Lee* (2011) 51 Cal.4th 620, 632.) We find there is ample evidence to support the verdict.

" 'Unlawful possession of a controlled substance for sale requires proof the defendant possessed the contraband with the intent of selling it and with knowledge of both its presence and illegal character.' " (*People v. Harris* (2000) 83 Cal.App.4th 371, 374 (*Harris*).) As the jury here was correctly instructed, the elements of the offense of possession with the intent to sell may be proved by circumstantial evidence and the reasonable inferences drawn therefrom. (CALCRIM Nos. 224, 225.) Moreover, possession of the controlled substance may be constructive or joint with another person. (*People v. Williams*

(1971) 5 Cal.3d 211, 215 [constructive possession includes areas accessible to and under "the joint dominion and control of the accused and another"]; see also CALCRIM No. 2302 ["Two or more people may possess something at the same time."].)

The evidence here established that defendant was in an area known for narcotics activity, late at night, in a car he was driving, with almost 9 grams of methamphetamine in a bag wedged between his seat and the center console, numerous plastic baggies, a scale and over $2,700 in cash in his wallet, including 45 twenty-dollar bills.  On such evidence, the jury could reasonably conclude defendant possessed the meth for sale, notwithstanding the fact there were two other individuals in the car with him at the time.

This evidence was bolstered by the expert testimony of Officer Larson, an experienced narcotics officer.  He testified that in his opinion, based on the evidence found in the car, that defendant possessed the meth for purposes of sale.  The jury was justified in relying on that opinion in finding defendant guilty. (*Harris*, *supra*, 83 Cal.App.4th at pp. 374-375 [" 'experienced officers may give their opinion that the narcotics are held for purposes of sale based upon such matters as the quantity, packaging and normal use of an individual' "].)

### DISPOSITION

The judgment of conviction is affirmed.


GRIMES, J.

WE CONCUR:


STRATTON, P. J.        WILEY, J.

11