Filed 2/8/21  P. v. Brooks CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(El Dorado)

----

| | |
|---|---|
| THE PEOPLE, | C089520 |
| Plaintiff and Respondent, | (Super. Ct. No. P18CRF0464) |
| v. | |
| CEDRIC LEE BROOKS, | |
| Defendant and Appellant. | |

Defendant Cedric Lee Brooks was convicted by jury of possession of a controlled substance, i.e., methamphetamine, for sale.  In a bifurcated proceeding, the trial court found defendant was previously convicted of a strike offense within the meaning of the three strikes law (Pen. Code, §§ 667, subds. (b)-(i), 1170.12)[1] and also served four prior prison terms (§ 667.5, former subd. (b)).  Following an unsuccessful motion to strike

---

[1] Undesignated statutory references are to the Penal Code.

1

defendant's prior strike conviction pursuant to *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*), the trial court sentenced him to serve eight years in state prison.

On appeal, defendant contends: (1) the evidence is insufficient to establish he possessed the methamphetamine with the intent to sell; (2) the trial court prejudicially abused its discretion by admitting evidence of two prior convictions under Evidence Code section 1101, subdivision (b); (3) the trial court also abused its discretion by (A) declining to strike defendant's prior strike conviction under *Romero*, and (B) imposing an upper term sentence; (4) the trial court violated section 1203.1b and defendant's constitutional right to due process by imposing a fee for the cost of the probation report after staying the minimum restitution fine and other mandatory fees due to defendant's inability to pay; and (5) we must remand the matter to the trial court with directions to strike all of defendant's one-year prior prison term enhancements because Senate Bill No. 136 (2019-2020 Reg. Sess.) (Senate Bill 136), which became effective January 1, 2020, and eliminates such enhancements for defendant's crimes, applies retroactively to cases not yet final on appeal.

Agreeing with the latter contention, we shall modify the judgment to strike each of defendant's one-year prior prison term enhancements.[2]  We also agree the trial court violated section 1203.1b by imposing the probation report fee after finding an inability to pay and shall also modify the judgment to strike that fee.  Defendant's remaining contentions lack merit or are forfeited.  The evidence is more than sufficient to support the jury's finding defendant possessed the methamphetamine for sale.  The trial court did

---

[2]    In light of this conclusion, we need not address defendant's assertion the trial court erred in staying rather than striking two of these enhancements.  We also grant defendant's request for judicial notice of certain legislative history materials pertaining to the passage of Senate Bill 136.  Although we need not resort to these materials in this case, granting judicial notice is nevertheless proper.  *(Kaufman & Broad Communities, Inc. v. Performance Plastering, Inc.* (2005) 133 Cal.App.4th 26, 30.)

2

not abuse its discretion by either admitting evidence of two prior narcotics convictions or declining to strike defendant's prior strike conviction under *Romero*. Finally, defendant has forfeited his challenge to the trial court's selection of the upper term. We shall therefore affirm the modified judgment.

## FACTS

During the early morning hours of December 9, 2018, while on patrol in the town of El Dorado Hills, a sheriff's deputy spotted two individuals seated in a car that was parked in a movie theater parking lot. The deputy made contact with both the driver and defendant, who was seated in the front passenger seat.

Defendant was on postrelease community supervision (PRCS) following his release from custody for a 2016 narcotics conviction, the details of which will be set forth later in the opinion. He was directed to step out of the car. Following a patdown search that uncovered no evidence, defendant was directed to sit on a curb while the deputy searched the front passenger compartment. As the deputy began this search, defendant spontaneously stated that he was a drug user and that a straw on the ground outside the front passenger door belonged to him. The straw had been cut to about four inches in length. Having previously seen similar straws, the deputy explained they are commonly used to consume narcotics.

Continuing with the search of the passenger compartment, the deputy found a clear plastic bag containing a "single large shard" of a "white crystalline substance" under the front passenger seat. The deputy recognized the substance as methamphetamine, but found it to be "relatively unusual" to find it in "one large chunk or shard." A presumptive field test corroborated the deputy's suspicion that the substance was methamphetamine.

3

The deputy placed defendant under arrest and advised him of his *Miranda* rights.[3] Defendant acknowledged he understood the advisement and then repeated that he was a drug user and asked to provide a urine sample. However, because the deputy did not see any signs of defendant being under the influence of a controlled substance, he did not oblige defendant's request.

Subsequent lab testing confirmed the substance seized from beneath the front passenger seat was methamphetamine. The shard weighed about 16.6 grams. Defendant's cell phone was also found in the passenger compartment. A picture of the shard of methamphetamine, taken three days before defendant's arrest, was saved on the phone. Certain text messages sent and received during the week before defendant's arrest indicated defendant was involved in buying and selling drugs. In one of these messages, sent about a week before his arrest, defendant's cell phone messaged someone identified as "Brandon," asking him about buying "some drugs to resell to . . . a neighbor of his up the street." In another message, sent the day before his arrest, defendant's phone messaged a "Josh Weed" about buying some "powder," which is "a common reference to narcotics."

Based on the quantity of methamphetamine recovered, "roughly 165 doses," and the fact that it was in the form of one "bulk amount" not typically possessed by simple users of the substance, a narcotics detective testified to his opinion that the shard of methamphetamine was possessed by defendant for purposes of sale. The detective explained his opinion was also based on the "one or two messages" on defendant's cell phone that were "indicative of sales" and the photo of the shard of methamphetamine that was also found on defendant's cell phone. With respect to the photo, the detective

---

[3]     *Miranda v. Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694].

4

explained such a photo is often used by drug dealers "to market their drugs to their clientele."

Finally, as previously indicated, the jury learned defendant was convicted of possession of narcotics for sale in 2008 and 2016. We describe these offenses in the discussion portion of the opinion, to which we now turn.

DISCUSSION

I

*Sufficiency of the Evidence*

Defendant contends the evidence is insufficient to establish he possessed the methamphetamine in this case with the intent to sell the substance. We disagree.

The standard of review is well-settled: "When reviewing a challenge to the sufficiency of the evidence, we ask ' "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." ' [Citation.] Because the sufficiency of the evidence is ultimately a legal question, we must examine the record independently for ' "substantial evidence—that is, evidence which is reasonable, credible, and of solid value" ' that would support a finding beyond a reasonable doubt. [Citation.]" (*People v. Banks* (2015) 61 Cal.4th 788, 804.)

" 'Unlawful possession of a controlled substance for sale requires proof the defendant possessed the contraband with the intent of selling it and with knowledge of both its presence and illegal character. [Citation.]' [Citations.] Intent to sell may be established by circumstantial evidence. [Citation.]" (*People v. Harris* (2000) 83 Cal.App.4th 371, 374 (*Harris*).)

Defendant possessed a "large shard" of methamphetamine weighing about 16.6 grams, the equivalent of "roughly 165 doses." A narcotics detective testified simple users of the substance typically do not possess methamphetamine in such a large quantity or in bulk form, causing him to form the opinion defendant possessed the substance with

5

the intent to sell. Also informing the detective's opinion was the fact that defendant had text messages on his cell phone that were "indicative of sales," and also had a photo of the shard of methamphetamine saved to the phone, commonly used by drug dealers for marketing purposes.

We conclude the foregoing facts provided substantial support for the detective's opinion that defendant possessed the methamphetamine for sale. " 'In cases involving possession of marijuana or [methamphetamine], experienced officers may give their opinion that the narcotics are held for purposes of sale based upon such matters as the quantity, packaging and normal use of an individual; on the basis of such testimony convictions of possession for purpose of sale have been upheld. [Citations.]' [Citation.] Thereafter, it is for the jury to credit such opinion or reject it." (*Harris*, *supra*, 83 Cal.App.4th at pp. 374-375.)

Finally, we note additional evidence of defendant's intent to sell came in the form of two prior convictions for possession of methamphetamine for purposes of sale. We describe these offenses, and their similarity with the current offense, immediately below.

## II

### *Prior Crimes Evidence*

Defendant also claims the trial court prejudicially abused its discretion by admitting evidence of two prior narcotics convictions under Evidence Code section 1101, subdivision (b). He is mistaken.

### A.

### *Additional Background*

The prosecution moved in limine to admit evidence of three prior narcotics convictions under Evidence Code section 1101, subdivision (b), to prove defendant's modus operandi, motive, intent to sell, and knowledge of the presence and illegal character of the shard of methamphetamine found under the passenger seat. The trial

6

court ultimately allowed evidence of two of these prior convictions, one in 2008 and one in 2016.

The relevant facts underlying the 2008 conviction are as follows. A Stockton police officer pulled over a car being driven by defendant. A subsequent search of defendant uncovered a white paper towel that was concealed in the front portion of his waistband. Inside the paper towel were six coin-sized plastic bags, each containing about a quarter of a gram of methamphetamine. As in this case, after the officer placed defendant under arrest and advised him of his rights under *Miranda*, defendant said he was a user of methamphetamine but did not display any signs of being under the influence. Defendant also said he planned to smoke the substance, but the officer found no pipe or other smoking device in his possession. Defendant also possessed about $362 in cash.

The relevant facts underlying the 2016 conviction are as follows. An El Dorado County sheriff's deputy made contact with defendant in the gaming area of Red Hawk Casino. As defendant turned to allow the deputy to perform a patdown search, defendant pulled a plastic bag out of his front pants pocket and threw it on the floor. The search uncovered no evidence, but another deputy retrieved the plastic bag from the casino floor. The bag contained over 16 grams of methamphetamine. After defendant was placed in the back of a patrol car, he spontaneously stated he did not use methamphetamine. Defendant also possessed about $1,400 in cash.

At the hearing on the prosecution's motion to admit this evidence, defense counsel argued the prior offenses were too dissimilar to the present offense to be admissible under Evidence Code section 1101, subdivision (b). Counsel pointed out both prior offenses had "cash involved to some extent" while the present offense did not. Counsel also argued defendant's girlfriend was in the car during the 2008 offense, whereas the driver of the car in this case was "a relative stranger." Counsel argued: "So what the People are trying to say is even though propensity evidence is barred, the way in which my client

7

behaves is so similar each time, he has this way of selling that's so unique that they need to bring in these priors. If they relied on his statements, he says he uses drugs. That -- here is the only time we actually see indicia of use is the blue [straw] that's not present in the other cases. [¶] So this case, these facts are different. The argument the People will be making to get a conviction will be different. The People will be saying that there has to be a conviction because no one should reasonably have this much methamphetamine for personal use. That's fine. It's a very different argument than what they would have made in prior cases saying the combination of some methamphetamine, plus some text messages, plus some money means personal use is not possible. But it's just a different mode of operation and it then becomes just propensity evidence . . . ."

In response, the prosecutor first pointed out the evidence in the present case would include text messages indicative of sales. The prosecutor then argued admission of evidence of the prior crimes was not sought solely to prove modus operandi, but was also sought to prove defendant possessed the intent to sell the methamphetamine and possessed knowledge of its character as a controlled substance. The prosecutor argued the prior offenses were similar enough to the present offense for these purposes. Finally, with respect to modus operandi, the prosecutor argued, "obviously there has to be some unique similarity between the prior cases and in this case. And what I would say is in each of the . . . prior convictions that the People seek to admit, the Defendant possesses relatively small quantities of drugs . . . and relatively no indicia of sales. And when confronted by law enforcement, he claims to be an addict. [¶] In this case, it's the exact same modus operandi. He was caught with a relatively small amount of drugs, 16 grams. We're not talking about 5, 10, 15 ounces -- or pounds of drugs, and relatively no indicia of sales in the car, other than a phone which was later found to contain sales texts. So when confronted by law enforcement, he again claims he's an addict . . . . [¶] Moreover, he hides the drugs, particularly in the [2016] conviction at Red Hawk Casino. He tossed the drugs on the ground when he was caught at the slot machines. In this case, he hid the

8

drugs underneath the passenger's seat of a vehicle.  In the 2008 case, he hid the drugs in his waistband in a paper towel."

The trial court ruled the 2008 and 2016 convictions were admissible under Evidence Code sections 1101, subdivision (b) and 352, to prove defendant possessed the intent to sell the methamphetamine in this case, and also knew of its presence and illegal character.

## B.

### *Analysis*

With certain exceptions, "evidence of a person's character or a trait of his or her character (whether in the form of an opinion, evidence of reputation, or evidence of specific instances of his or her conduct) is inadmissible when offered to prove his or her conduct on a specified occasion."  (Evid. Code, § 1101, subd. (a).)  One such exception is found in subdivision (b) of this section, which provides:  "Nothing in this section prohibits the admission of evidence that a person committed a crime, civil wrong, or other act when relevant to prove some fact (such as . . . intent, . . . knowledge, . . .) other than his or her disposition to commit such an act."  (*Id*., subd. (b).)  We review the trial court's admission of other crimes evidence for abuse of discretion.  (*People v. Lindberg* (2008) 45 Cal.4th 1, 25.)

"In prosecutions for drug offenses, evidence of prior drug use and prior drug convictions is generally admissible under Evidence Code section 1101, subdivision (b), to establish that the drugs were possessed for sale rather than for personal use and to prove knowledge of the narcotic nature of the drugs."  (*People v. Williams* (2009) 170 Cal.App.4th 587, 607.)  This general rule applies here.

When defendant was detained by law enforcement in the movie theater parking lot, as the sheriff's deputy began searching the passenger compartment of the car, defendant stated he was a drug user.  He repeated this assertion when the deputy found the methamphetamine under the passenger seat.  The car did not belong to him.  It

belonged to the driver of the vehicle. Based on these facts, the defense argued reasonable doubt existed with respect to whether the methamphetamine was possessed by the driver rather than defendant, and even if it was in defendant's possession, reasonable doubt existed with respect to whether he possessed it for personal use rather than for purposes of sale. As previously explained, the prosecution was required to prove defendant possessed the methamphetamine with the intent to sell it and with knowledge of its presence and illegal character. (*Harris*, *supra*, 83 Cal.App.4th at p. 374.) The challenged evidence of defendant's prior narcotics convictions was properly admitted to establish such intent and knowledge.

Nevertheless, defendant argues the prior offenses were not "sufficiently similar" to the present offense to be admissible for these purposes. We disagree.

"The least degree of similarity (between the uncharged act and the charged offense) is required in order to prove intent. [Citation.] '[T]he recurrence of a similar result . . . tends (increasingly with each instance) to negative accident or inadvertence or self-defense or good faith or other innocent mental state, and tends to establish (provisionally, at least, though not certainly) the presence of the normal, i.e., criminal, intent accompanying such an act . . . .' [Citation.] In order to be admissible to prove intent, the uncharged misconduct must be sufficiently similar to support the inference that the defendant ' "probably harbor[ed] the same intent in each instance." [Citations.]' [Citation.]" (*People v. Ewoldt* (1994) 7 Cal.4th 380, 402.) "Likewise, to establish knowledge when that element is akin to absence of mistake, the uncharged events must be sufficiently similar to the circumstances of the charged offense to support the inference that what defendant learned from the prior experience provided the relevant knowledge in the current offense." (*People v. Hendrix* (2013) 214 Cal.App.4th 216, 242-243.)

Here, in both the present offense and the prior offenses, defendant possessed more methamphetamine than a simple user of the substance would typically possess and

10

attempted to conceal the substance. In the present offense, the shard of methamphetamine was concealed under the passenger seat of the car. In the 2008 conviction, six small bags of the substance were concealed in a paper towel in his waistband. In the 2016 conviction, defendant threw a larger bag of methamphetamine, similar in size to the shard in this case, on the casino floor when contacted by law enforcement. Moreover, in both the current offense and the 2008 conviction, when the drugs were discovered, defendant claimed to be a user but did not display any signs of being under the influence.

We conclude both of these prior offenses are sufficiently similar to the present offense to support the inference defendant knew of the presence of the methamphetamine under the passenger seat, knew it was a controlled substance, and probably harbored the same intent in this case that he harbored in the prior cases, i.e., the intent to sell the substance. (See *People v. Williams*, *supra*, 170 Cal.App.4th at p. 607.)

This conclusion does not end our inquiry, however. "Even if evidence of other crimes is relevant under a theory of admissibility that does not rely on proving disposition, it can be highly prejudicial. 'Regardless of its probative value, evidence of other crimes always involves the risk of serious prejudice. . . .' [Citation.] Therefore, the law places other restrictions on its admissibility." (*People v. Thompson* (1980) 27 Cal.3d 303, 318.) Relevant here, Evidence Code section 352 provides for the exclusion of otherwise admissible evidence if its probative value is "substantially outweighed by the probability that its admission [would] . . . create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." "Since 'substantial prejudicial effect [is] inherent in [other crimes] evidence,' uncharged offenses are admissible only if they have substantial probative value." (*Thompson,* at p. 318, fn. omitted.)

There was no abuse of discretion. The challenged evidence had substantial probative value with respect to whether defendant possessed the requisite knowledge and intent. The prosecution presented the evidence through the brief testimony of two

11

witnesses. Finally, the trial court instructed the jury regarding the limited purposes for which the prior crimes evidence was admitted, thereby "eliminat[ing] any danger 'of confusing the issues, or of misleading the jury.' [Citation.] We presume the jury followed these instructions. [Citation.]" (*People v. Lindberg*, *supra*, 45 Cal.4th at pp. 25-26 [no abuse of discretion where evidence had substantial probative value, prosecution kept its presentation brief so it would be neither cumulative nor excessive, and trial court provided limiting instruction].)

The trial court did not abuse its discretion in admitting the challenged evidence of defendant's 2008 and 2016 narcotics convictions.

## III

### *Sentencing Discretion*

Defendant further asserts the trial court abused its discretion by (A) declining to strike his prior strike conviction under *Romero*, and (B) imposing an upper term sentence. Not so.

### A.

### *Denial of Defendant's Romero Motion*

Section 1385, subdivision (a) provides that a "judge or magistrate may, either of his or her own motion or upon the application of the prosecuting attorney, and in furtherance of justice, order an action to be dismissed." In *Romero*, our Supreme Court held a trial court may utilize section 1385, subdivision (a) to strike or vacate a prior strike conviction for purposes of sentencing under the three strikes law, "subject, however, to strict compliance with the provisions of section 1385 and to review for abuse of discretion." (*Romero*, *supra*, 13 Cal.4th at p. 504.) Similarly, a trial court's "failure to dismiss or strike a prior conviction allegation is subject to review under the deferential abuse of discretion standard." (*People v. Carmony* (2004) 33 Cal.4th 367, 374 (*Carmony*).)

12

"In reviewing for abuse of discretion, we are guided by two fundamental precepts. First, ' "[t]he burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary. [Citation.] In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review." ' [Citation.] Second, a ' "decision will not be reversed merely because reasonable people might disagree. 'An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge.' " ' [Citations.] Taken together, these precepts establish that a trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*Carmony, supra,* 33 Cal.4th at pp. 376-377.)

We are also mindful that " 'the Three Strikes law does not offer a discretionary sentencing choice, as do other sentencing laws, but establishes a sentencing requirement to be applied in every case where the defendant has at least one qualifying strike, unless the sentencing court "conclud[es] that an exception to the scheme should be made because, for articulable reasons which can withstand scrutiny for abuse, this defendant should be treated as though he actually fell outside the Three Strikes scheme." ' [Citation.]" (*Carmony, supra,* 33 Cal.4th at p. 377.) "[T]he court in question must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*People v. Williams* (1998) 17 Cal.4th 148, 161 (*Williams*).) Thus, the three strikes law "creates a *strong presumption* that any sentence that conforms to these sentencing norms is both rational and proper." (*Carmony,* at p. 378, italics added.) This presumption will be rebutted only in an "extraordinary case—where the relevant factors described in *Williams, supra*, 17 Cal.4th

13

148, manifestly support the striking of a prior conviction and no reasonable minds could differ." (*Ibid.*)

Here, after hearing argument from counsel, the trial court provided a brief description of the foregoing standard for ruling on a *Romero* motion and indicated it had read and considered defendant's motion, the prosecution's opposition, as well as various supplemental materials filed by defendant. The trial court then provided an overview of defendant's criminal history, beginning in 2005 with the strike conviction for robbery, for which defendant was sentenced to two years in state prison. Defendant was then convicted of making or passing fictitious checks in 2007, possession of a controlled substance for sale in 2008, transportation for sale of a controlled substance in 2013, and possession of a controlled substance for sale in 2016. Sentenced to nine years in state prison for the latter conviction, defendant was given early release due to changes in the law and committed the present offense, also possession of a controlled substance for sale, while on PRCS. The trial court noted defendant has "done well while he was in prison," but did not find that to be significant because "[o]ne would expect that he wouldn't have any violations of the law while he is in custody." However, when released on parole or PRCS, "he has not always been successful in completing either."

The trial court then explained that defendant was "in his mid [thirties]" and "still a relatively young man," but also noted "he has been adamant . . . that it is not drug use that has led him to these drug convictions but rather [the] dealing of drugs." Noting the age of the strike offense, the trial court explained that would be significant had defendant "kept himself free of custody and offenses, something unfortunately he has not been able to do." Finally, the trial court weighed the factors in aggravation against the factors in mitigation and found the aggravating factors far outweighed those in mitigation. Indeed, the trial court found only one factor in mitigation, i.e., defendant appeared to have been motivated to sell drugs by a desire to provide for his family. Based on all of this, the trial court concluded defendant did not fall outside the spirit of the three strikes law.

Defendant argues the trial court abused its discretion in declining to strike his prior strike conviction because the present offense was "a non-serious, nonviolent felony" and, as the trial court noted, "it appeared [defendant] had been motivated to commit the offense in an effort to provide for his family." Defendant also points to "character letters, reflecting he had community support to assist him in becoming a productive member of society." Even accepting defendant's characterization of the present offense, his motivation for committing it, and the content of the character letters, these factors do not outweigh the numerous factors weighing against a determination that defendant fell outside the spirit of the three strikes law, either "in whole or in part." (*Williams*, *supra*, 17 Cal.4th at p. 161.) This is not a case in which "the relevant factors described in *Williams*" so "manifestly support the striking of a prior conviction [that] no reasonable minds could differ." (*Carmony*, *supra*, 33 Cal.4th at p. 378.)

Nor are we persuaded by defendant's assertion that Propositions 36, 47, and 57 somehow combine to make the trial court's denial of his *Romero* motion an abuse of discretion. Proposition 36 "diluted the three strikes law by reserving the life sentence for cases where the current crime is a serious or violent felony or the prosecution has pled and proved an enumerated disqualifying factor." (*People v. Yearwood* (2013) 213 Cal.App.4th 161, 167.) Because this is not a third strike case in which defendant was sentenced to a life term, Proposition 36 does not apply. "Proposition 47 reclassified as misdemeanors certain drug- and theft-related offenses that previously were felonies or wobblers," such as simple possession of a controlled substance, and "also added a provision allowing felony offenders 'serving a sentence for a conviction' for offenses now reclassified as misdemeanors to petition to have their sentences recalled and to be resentenced." (*People v. Valencia* (2017) 3 Cal.5th 347, 355.) Because possession of a controlled substance *for sale* (Health & Saf. Code, § 11378) was not reclassified by Proposition 47 (see § 1170.18, subd. (a)), this enactment is also inapplicable to defendant's case.

15

Finally, the portion of Proposition 57 relied upon by defendant in this case amended the California Constitution to add article I, section 32, providing "[a]ny person convicted of a nonviolent felony offense and sentenced to state prison shall be eligible for parole consideration after completing the full term for his or her primary offense" and also providing the Department of Corrections and Rehabilitation with additional "authority to award credits earned for good behavior and approved rehabilitative or educational achievements."  (Cal. Const., art. I, § 32, subd. (a); Levenson & Ricciardulli, Cal. Criminal Procedure (The Rutter Group 2020) Parole, § 31:7, pp. 31-12 to 31-15.)  This constitutional provision has nothing to do with whether a trial court should strike a prior strike conviction for purposes of sentencing under *Romero*.

Although we agree with defendant's general observation that the cited propositions reflect "a changed mindset from the draconian and stiff penalties for the non-violent recidivist," neither individually nor combined do they make the trial court's exercise of discretion on defendant's *Romero* motion an abuse of discretion.  We conclude there was no such abuse in this case.

**B.**

***Selection of the Upper Term***

Defendant does not provide a separate argument regarding the propriety of selecting the upper term sentence.  Instead, as the Attorney General accurately observes, he "summarily merges his complaint about the upper term with his *Romero* motion argument without explaining how the trial court purportedly erred in finding an aggravating circumstance needed for the upper term."  For this reason, we consider the point forfeited for failure to raise the issue under a separate heading or provide reasoned argument and citation to relevant authority.  (See Cal. Rules of Court, rule 8.204(a)(1)(B); *Opdyk v. California Horse Racing Bd.* (1995) 34 Cal.App.4th 1826, 1830, fn. 4 [an appellant must present each point separately in its opening brief, showing the nature of the question to be presented and the point to be made; failure to do so may

16

be deemed a forfeiture of the argument]; *Salas v. Department of Transportation* (2011) 198 Cal.App.4th 1058, 1074 [contentions not supported by reasoned argument and authority are forfeited].)

**IV**

***Imposition of the Probation Report Fee***

Defendant additionally contends that the trial court violated both section 1203.1b and his constitutional right to due process by imposing a fee for the cost of the probation report after staying the minimum restitution fine and other mandatory fees under *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*), which held "due process of law requires the trial court to conduct an ability to pay hearing and ascertain a defendant's present ability to pay before it imposes court facilities and court operations assessments." (*Id.* at p. 1164.) We conclude imposition of the probation report fee violated section 1203.1b and decline to address defendant's due process argument under *Dueñas*.

**A.**

***Additional Background***

The probation report notes defendant was working as a residential painter at the time of the current offense, making $900 per month. The report further notes: "The defendant was provided a Financial Statement in order to assess the defendant's ability to pay, and the application of the sliding scale payment schedule, based on the 2018 Federal Poverty Guidelines, was used. Therefore, it is respectfully recommended the defendant be ordered to pay $109.50 for the cost of the Probation Report."

During the sentencing hearing, defense counsel asked the trial court to "strike" or "stay any fines in [defendant's] case" under *Dueñas* and "some of the other cases that have subsequently come out" because "there has not been a showing by the People of [defendant's] ability to pay, not that they could prove that, he's in custody, and going to be in custody for a while, so he doesn't really have the ability to pay." The prosecution declined to be heard on the matter.

17

The trial court ruled as follows:  "The Court will impose the minimum restitution fine pursuant to [section] 1202.4 of $300 and stay that restitution fine until there is a showing that Mr. Brooks has the ability to pay that.  [¶]  Further, the Court would impose the additional $300 restitution fine fee pursuant to [section] 1202.45 and stay that pending successful completion of your parole or [PRCS].  [¶]  That means that if you're successful on your release, Mr. Brooks, that additional fine would not be due and payable to the court, sir.  [¶]  In addition, the Court would impose the cost of the probation report in the amount of $109.50.  That's pursuant to . . . [section 1203.1b].  The Court will not stay that.  That is ordered and is not covered under [*Dueñas*].  [¶]  The Court would impose the Court operations fee of $40, the critical needs assessment fee of $30 and stay that as well pending a showing of ability to pay."

## B.

### *Analysis*

As relevant here, section 1203.1b provides:  "In any case in which a defendant is convicted of an offense and is the subject of any . . . presentence investigation and report, whether or not probation supervision is ordered by the court, . . . the probation officer, or the officer's authorized representative, taking into account any amount that the defendant is ordered to pay in fines, assessments, and restitution, shall make a determination of the ability of the defendant to pay all or a portion of the reasonable cost of . . . preparing any presentence report . . . .  The court shall order the defendant to appear before the probation officer, or the officer's authorized representative, to make an inquiry into the ability of the defendant to pay all or a portion of these costs.  The probation officer, or the officer's authorized representative, shall determine the amount of payment and the manner in which the payments shall be made to the county, based upon the defendant's ability to pay.  The probation officer shall inform the defendant that the defendant is entitled to a hearing, that includes the right to counsel, in which the court shall make a determination of the defendant's ability to pay and the payment amount.  The defendant

18

must waive the right to a determination by the court of the defendant's ability to pay and the payment amount by a knowing and intelligent waiver." (§ 1203.1b, subd. (a).)

"Where the defendant does not waive the right to a judicial determination, the probation officer 'shall refer the matter to the court for the scheduling of a hearing to determine the amount of payment and the manner in which the payments shall be made' and at that time '[t]he court shall order the defendant to pay the reasonable costs if it determines that the defendant has the ability to pay those costs based on the report of the probation officer, or his or her authorized representative.' (§ 1203.1b, subd. (b).)" (*People v. Neal* (2018) 29 Cal.App.5th 820, 825.)

Here, the probation officer made the initial determination of defendant's ability to pay $109.50 for the costs of the probation report, as provided in section 1203.1b, subdivision (a). Although there is no indication in the record that the probation officer informed defendant of his right to a hearing before the trial court at which the court would make the ultimate determination of his ability to pay, such a hearing was held, defendant was represented by counsel, and counsel objected to the imposition of "any fine" under *Dueñas* because "there has not been a showing by the People of [defendant's] ability to pay." The probation report fee authorized by section 1203.1b is not a "fine," but the trial court apparently understood counsel's objection to cover this fee because it addressed the probation report fee in its ruling. That ruling, however, did not conclude defendant possessed the ability to pay the probation report fee. Instead, undoubtedly because counsel's specific objection was made under *Dueñas*, and not under the statutory requirements of section 1203.1b, the trial court simply ruled the *Dueñas* decision did not apply to the probation report fee.

We therefore have a situation in which defendant's trial counsel can be understood to have objected to all fines and fees based on defendant's inability to pay, but did so under *Dueñas*, i.e., based on principles of due process, not based on the statutory requirements of section 1203.1b. For this reason, the Attorney General argues the

19

statutory claim is forfeited. We might agree except for the fact that the trial court's ruling impliedly finds defendant did not have an ability to pay the probation report fee. Indeed, the trial court explicitly found the prosecution had not demonstrated defendant possessed an ability to pay the lesser mandatory assessments of $40 and $30 under section 1465.8 and Government Code section 70373, respectively. Although the forfeiture doctrine applies to claims that a fine or fee was improperly imposed, not because it was unauthorized by statute, but because the trial court failed to find an ability to pay (*People v. McCullough* (2013) 56 Cal.4th 589, 599 [booking fee]; *People v. Crittle* (2007) 154 Cal.App.4th 368, 371 [crime prevention fee]; *People v. Valtakis* (2003) 105 Cal.App.4th 1066, 1072 [probation fee]), in this case, the trial court imposed the probation report fee after impliedly finding *an inability to pay* the fee.

Section 1203.1b plainly does not authorize imposition of the probation report fee in these circumstances. We shall modify the judgment to strike this fee.

## V

### *Retroactive Application of Senate Bill 136*

Finally, we also agree, as does the Attorney General, that defendant's prior prison term enhancements must be stricken because Senate Bill 136, which became effective January 1, 2020, and eliminates such enhancements for defendant's crimes, applies retroactively to cases not yet final on appeal.

Senate Bill 136 amended section 667.5, subdivision (b), to remove the one-year enhancement for prior prison terms, except when the offense underlying the prior prison term was a sexually violent offense. (See § 667.5, subd. (b).) Because Senate Bill 136 reduces sentences for a crime it applies retroactively to convictions not final on appeal absent evidence of a contrary legislative intent. (See *People v. Brown* (2012) 54 Cal.4th 314, 323-324; *In re Estrada* (1965) 63 Cal.2d 740, 745.) The enactment therefore applies to this case.

20

The offenses underlying defendant's prior prison terms were not sexually violent offenses.  Accordingly, the prior prison term enhancements cannot stand.  We shall modify the judgment to strike each of defendant's four one-year prior prison term enhancements.

## DISPOSITION

The judgment is modified to strike the probation report fee and each of defendant's one-year prior prison term enhancements.  As modified, the judgment is affirmed.  The trial court is directed to prepare an amended abstract of judgment reflecting the modification and to forward a certified copy thereof to the Department of Corrections and Rehabilitation.

　　　　　　　　　　　　/s/　　　　　　　　　　　　
　　　　　　　　　　　　HOCH, J.

We concur:

　/s/　　　　　　　　　　　　　　　
HULL, Acting P. J.

　/s/　　　　　　　　　　　　　　
KRAUSE, J.